Argued March 11; affirmed April 1, 1941

# FOWLER ET AL. v. GEHRKE

(111 P. (2d) 831)

Before Kelly, Chief Justice, and Belt, Lusk, Rand and Rossman, Associate Justices.

*Oscar Hayter*, of Dallas, for appellants.

*Elmer D. Cook*, of Salem, for respondent.

RAND, J. The plaintiffs brought this action in ejectment to recover possession of a small part of a vacated street in the town of Eola, Polk county, Oregon. The town of Eola was laid out in 1855 by one William Duran, who was in possession of the lands embraced therein and of adjoining lands under a donation land claim for which he secured a patent from the United States.

The answer alleges that the defendant is the owner and entitled to the possession of that part of the vacated street and that she acquired her title thereto by adverse user.

The case was tried before the court and a jury. At the close of the testimony, both parties having moved for a directed verdict, the jury was discharged and the trial thereafter proceeded before the court alone and resulted in a judgment in favor of the defendant, from which the plaintiffs have appealed.

The defendant is the owner of block 30, as designated on the original plat. She acquired her title thereto by descent from her mother who purchased said block in 1882. The plaintiffs are the owners of certain lands embraced in said donation land claim not including those in dispute. As so laid out and platted, block

30 was bounded on the north by Third street and on the east by Ingle street. Both of said streets were 75 feet in width and have since been vacated. When so vacated, under section 95-1317, O. C. L. A., the defendant's title was extended to the center of each of said streets so far as they adjoined and were in front of her block. That statute merely adopted the common-law rule that, when a road or street divides two estates, the title of the adjoining owners extends to the center of the abandoned road or street under the maxim *usque ad medium filum viae*, and each of said adjoining owners thereby became entitled to the exclusive use of one-half of the abandoned road or street adjacent to and in front of their property.

By such vacation, the defendant's title was extended to the middle line of Third street and to the middle line of Ingle street. The property in controversy here is the east half of Ingle street extended southerly about 100 feet along the course of said street from where the middle line of Third street, if extended, would cross Ingle street to the south end of said block 30.

Under said statute, if the plaintiffs or any of their predecessors in interest had, at the time of said vacation of Ingle street, owned any land adjoining the east line of Ingle street opposite defendant's said premises, they would have acquired title to the center of Ingle street, which would have included all the property in controversy. The sole question, therefore, is: Did the plaintiffs or any predecessor of the plaintiffs own any real property adjoining the east line of Ingle street from said middle line of Third street southerly to a point opposite the south end of defendant's block adjoining said Ingle street, and, if so, has the defendant acquired title to the same by adverse user since said street was vacated?

■ It is not necessary for us to consider whether or not the defendant has acquired title by adverse user to any of the property in dispute for she is in possession of the same and the plaintiffs, in order to recover in this action, must show title in themselves and cannot rely upon the weakness of defendant's title.

We are satisfied from the testimony offered upon the trial that the east line of Ingle street, at the time that street was vacated, was extended wholly across the territorial road to which we will now refer, and, hence, there could have been no privately owned land abutting on the east line of Ingle street adjoining the premises in controversy, since all the land abutting the same was a part of a public highway then occupied and used for public purposes.

In order to show the basis of our decision, it is necessary to again refer to the plat of said townsite as filed at the time by Duran. This shows that Ingle street extended north and south along the entire east line of the townsite and that there were no lots or blocks adjoining said east line on the east side thereof. The evidence further shows that Thomas Holman, one of plaintiffs' predecessors in interest, conveyed to the State of Oregon as a public park what is known and referred to in the evidence as Holman Park. Plaintiffs called as one of their witnesses at the trial in the court below Mr. Edward J. Himes, the county surveyor of Polk county, and had him prepare a plat which they offered in evidence, showing the location of Ingle street and its east line in its connection with Holman Park. That witness, on direct examination and in answer to interrogations propounded by plaintiffs' counsel, testified that the distance from the southwest corner of Holman Park to the center of Ingle street, at a point

opposite defendant's premises, was 90 feet and that between the two said points was the east half of Ingle street and an old territorial road which is still in use by the public. He further testified that the west boundary of Holman Park was the east boundary of the territorial road and that the southwest corner of Holman Park was marked by an iron bolt imbedded in the ground at that point.

The territorial road referred to was a road extending from J. Doak's ferry in Polk county to Marysville in Benton county, passing through Cincinnati and Independence. The name "Cincinnati" was changed to Eola at or before the filing of the plat of Eola above referred to. In January, 1852, the legislative assembly of the then Territory of Oregon appointed commissioners to establish said road and directed that such commissioners "shall proceed to locate said road on the nearest and best route from J. Doak's Ferry, to Marysville, through Cincinnati and Independence by surveying and marking the same in conformity to the provisions of an act entitled 'an act defining the manner of locating Territorial roads,' passed February 4, 1851." (See Laws of Oregon, 1851-2, Local Laws, p. 23.) The act of February 4, 1851, thus referred to, is published in General Laws of Oregon, 1850, pp. 258-259. By section 6 thereof, it provides:

"All territorial roads authorized to be laid out by any law of this territory, and not yet commenced, shall be laid out in the manner prescribed in this act; and the commissioners shall comply with all the regulations herein contained. And further, The established width of all territorial roads shall be sixty feet."

Such was the law in force at the time this territorial road was laid out and established over Duran's dona-

tion land claim at the place directly opposite the small tract of land in dispute herein.

█ Upon the argument here it was submitted that this road was only 40 feet in width at the place in controversy. No evidence was offered in support of this contention and it is overruled by the statute in force at that time which we must presume was complied with by the commissioners who established the road. Plaintiffs are bound by the testimony offered by them upon the trial and it conclusively appears from the testimony of Mr. Himes and the map prepared by him and offered by the plaintiffs in evidence that the west line of said territorial road at said point was located and established within the boundaries of what later became Ingle street, and that this west line of said road, when extended northerly and until it had passed the property in dispute, was entirely along and in Ingle street after Ingle street had been dedicated for public use by Duran upon the filing of his plat. Hence, there could have been no privately owned real property abutting on that part of the east line of Ingle street opposite the property in dispute, and, since there was no privately owned property at said place, no part of Ingle street could be acquired by the plaintiffs or by any grantor or predecessor in interest of the plaintiffs by the vacation of Ingle street.

From this it follows that plaintiffs have wholly failed to establish any title to the property in dispute and that the judgment appealed from must, therefore, be affirmed.