Argued April 9, affirmed July 3, petition for rehearing denied
August 13, 1952.

JONES ET AL. *v.* JACKSON ET AL.

246 P. 2d 546

*Samuel M. Bowe,* of Grants Pass, argued the cause for appellants. With him on the brief was O. S. Blanchard, of Grants Pass.

*V. A. C. Ahlf,* of Grants Pass, argued the cause for respondents. With her on the brief was James T. Chinnock, of Grants Pass.

Before BRAND, Chief Justice, and HAY, LUSK, WARNER and TOOZE, Justices.

HAY, J.

This is a suit in equity involving a conjunction of causes of suit to remove clouds from title to real property with causes of suit to quiet title thereto. Although all the plaintiffs are not interested in all of the real property involved, all the defendants are, and plaintiffs have joined together in one suit what would normally be three separate and distinct suits, justification for which joinder apparently being found in § 1-317, OCLA, as amended by chapter 342, Oregon Laws 1941, which has reference, inter alia, to suits and actions relating to title to real property by owners taking their titles directly from a common ancestor. No question of misjoinder has been raised.

The pleadings are somewhat involved, and, we think, the issues will be more readily comprehended by the following statement of facts. Ella Vincent, a widow, was the owner of real property in Josephine County, described as the north 57 acres of the east half of the southeast quarter of section 24, and the south 23 acres of the north 30 acres of the northeast quarter of the

northeast quarter of section 25, township 37 south, range 5 west of the Willamette Meridian, and lots 9 and 10, Block 95, Riverside Addition to Grants Pass, Oregon. Her first husband, Ike Vincent, died August 30, 1927, and thereafter she married one E. E. White. By her marriage to Vincent she had the following children: James Edward Vincent and Wilford Vincent, sons, and Ida Evalin Vincent (now Basye), a daughter. On December 21, 1936, Ella conveyed said real property to her then husband, E. E. White, by warranty deed. Mrs. White died, intestate, December 31, 1936. Her children, above named, survived her. For convenience, we shall refer to them as Mrs. White's heirs.

On January 4, 1937, E. E. White conveyed the above described real property, except the fifty-seven-acre tract, to Mrs. White's heirs, reserving a life estate to himself in the property conveyed. On January 22, 1938, he commenced a suit against Mrs. White's heirs to quiet title in himself to the fifty-seven-acre tract. The defendants' answer, by way of affirmative defense, alleged that on December 20, 1936, E. E. White, during his wife Ella's last sickness and a few days prior to her death, when she was suffering intense physical and mental pain, persuaded her to convey to him the real property first above described, without consideration, in reliance upon his false and fraudulent representations that such conveyance would avoid the necessity for "probating" his wife's estate, and that, upon her death, he would immediately transfer and convey said property to her children. The court, the late Judge H. D. Norton presiding, found in favor of Mrs. White's heirs, and, on November 23, 1938, entered a decree to the effect that White was holding said property as a trustee ex maleficio in trust for said heirs. On February 4, 1939, the court amended such decree by

ordering and directing White, within ten days, to convey said property to said heirs in accordance with the decree, subject only to his curtesy rights as surviving husband of Ella White, and decreed that, failing such conveyance, the decree of the court should stand in lieu thereof. White failed to convey. On September 19, 1939, Mrs. White's heirs conveyed an undivided one-third interest in said property to O. S. Blanchard.

On July 23, 1940, White petitioned the county court of Josephine County for letters of administration upon the estate of his deceased wife, and, on the same day, was appointed administrator, qualified as such, and filed his inventory and appraisement, listing therein said real property as property of the estate. On June 13, 1941, White filed his own claim as a creditor of said estate in the sum of $855, "for and on account of advancements, outlays of money and other considerations furnished in connection with and for the protection, maintenance and preservation of the sole and separate property of said decedent acquired prior to her marriage to this claimant", besides a sum of $97 allegedly paid by him on account of expenses of decedent's last sickness and funeral. This claim was approved by the county judge under date of January 22, 1941, which was perhaps a typographical error and intended to be June 22, 1941.

On June 13, 1941, White applied to have lots 9 and 10, Block 95, Riverside Addition to Grants Pass, set aside to him as homestead, and, on the same day, the county court made an order setting aside such property to him "as exempt property and as a probate homestead, for his exclusive use and benefit and as his sole and separate property."

On June 25, 1941, White, as administrator, filed in the county court his petition for authority to sell the

fifty-seven-acre tract "to pay the debts of this estate", and on the same day the court made an order authorizing him to do so. On June 30, 1941, citation issued to Mrs. White's heirs. On July 31, 1941, White filed a new petition in which he asked for authority to sell the 57 acres, and, in addition, the two city lots. The petition alleged that insufficient time had been allowed for Mrs. White's heirs to answer the citation issued upon the first petition. It alleged further, in effect, that quick action was necessary by reason of the fact that in September, 1941, Josephine County would acquire title to the two city lots for delinquent taxes thereon. On July 31, 1941, citation issued upon such petition, and the returns thereon showed that due service was made upon Mrs. White's heirs and upon O. S. Blanchard. On August 18, 1941, J. E. Vincent and O. S. Blanchard filed objections to the proposed sale, based upon Judge Norton's decree in White's suit to quiet title, by virtue of which, as stated, title to said real property became vested in Mrs. White's heirs. On September 4, 1941, the matter was transferred to the circuit court.

On September 12, 1941, the circuit court entered an order authorizing White as administrator to borrow money upon the fifty-seven-acre tract and lots 9 and 10, Block 95, Riverside Addition to Grants Pass. The order recited that the administrator and the objectors appeared by respective counsel; that the court heard the matter and the argument of counsel; that there was neither money nor personal property in the administrator's hands; and that Josephine County had foreclosed upon the real property of the estate for delinquent taxes, the redemption period in respect of which would expire September 13, 1941. Accordingly, the order authorized the administrator to incur a debt

by borrowing money "for the purpose of paying the taxes against said property and to make redemption before the expiration thereof becomes final," and to execute a mortgage on such property as security, with interest at 6 per cent per annum, such mortgage to run for a period of not less than one year.

White thereupon borrowed the sum of $280.66 from Mrs. Clara Oupor (now Jones), his daughter by a former marriage, and, on said September 12, 1941, executed a mortgage in her favor upon the 57 acres and the two town lots to secure repayment of said debt. On the same day, White redeemed the city lots from the county's tax delinquency sale by paying to the sheriff the sum of $168.29, and a certificate of redemption was issued to him.

On April 29, 1943, Mrs. Oupor commenced a suit to foreclose her mortgage. She joined as defendants E. E. White, as administrator of the estate of Ella White, deceased, the heirs of Mrs. White and their respective spouses, and O. S. Blanchard and his wife. In her complaint, she alleged that her mortgage debt was a first, prior and valid lien upon the mortgaged property, and, in the prayer, asked that the defendants should be forever barred and foreclosed of all rights in or to the property. She raised no issue respecting title to the mortgaged premises. All the defendants were duly served, and all defaulted. The defendants Blanchard, however, entered into a written stipulation with plaintiff, through their respective attorneys, to the effect that, in the event that such defendants should make no appearance in the suit, no judgment or decree should be taken against them for any principal, interest, costs, disbursements, or other sum claimed or demanded by plaintiff therein. A decree of foreclosure was entered on August 13, 1943. Execution issued on the day

following, and, on September 15, 1943, the property was sold at sheriff's sale to the plaintiff, Clara Oupor, by parcels, as follows: Lot 9 for the sum of $150; Lot 10 for the sum of $150; the fifty-seven-acre tract for the sum of $268.16. On October 20, 1944, the sale was confirmed by the court, and on December 31, 1944, a sheriff's deed, conveying said property to Clara Oupor was executed and delivered.

The amended complaint set forth three causes of suit, each having to do with a portion of the real property above described. Briefly stated, the first cause of suit alleges that plaintiffs, Earl L. Wiederhold and wife, are the owners and in possession of lot 10 in block 95, Riverside Addition to Grants Pass, Oregon; that a certain quitclaim deed by Mrs. White's heirs to defendant, O. S. Blanchard, conveying an undivided one-third interest in said property, constitutes a cloud on said plaintiffs' title; that a certain warranty deed by the above mentioned E. E. White in favor of defendants Ida Evalin Basye, James Edward Vincent and Charles Wilford Vincent, conveying said property, but reserving a life estate, constitutes a cloud on plaintiffs' said title; that, for more than ten years last past plaintiffs, their grantors and predecessors in interest, have been in adverse possession of said property under color of title, claiming to own the same in fee simple absolute as against each and all of the defendants and all other persons; that plaintiffs and their said grantors and predecessors in interest have paid all taxes levied on said property during all of said time; that defendants and each of them claim some right, title, estate, lien, or interest in said property adverse to plaintiffs; that they should be required to appear and set forth such claims, or be forever estopped; and that plaintiffs have no adequate remedy at law.

The second cause of suit is in terms identical with the first, but has reference to lot 9, said block and addition to Grants Pass, and names plaintiff Susie M. Boren as the owner and person in possession thereof.

The third cause of suit is in identical terms, but has reference to the fifty-seven-acre tract, and to lot 3 in block V, Riverside Addition to Grants Pass, Oregon. The defendants have disclaimed any interest in said lot 3, and hence we need not refer to it again.

The prayer of the amended complaint seeks to have the above mentioned deeds set aside and held for naught as clouds on plaintiffs' title; and asks that plaintiffs respectively be decreed to be the owners of the property in fee simple, and that defendants and each of them be forever estopped from claiming or asserting any right, title, estate, lien, or interest in said property or any part thereof, and for further equitable relief.

The answer to each cause of suit is, in the main, a general denial, with formal admissions. For a further answer and defense, defendants set forth a narrative recital of the manner whereby the legal title to the property became vested in them. They pray that the amended complaint be dismissed, and for their costs and disbursements.

Plaintiffs filed a second amended reply to the answer, in form a general denial with formal admissions. Affirmatively, they alleged the death of Ella White; the appointment of E. E. White as administrator of her estate; the filing of White's claim as a creditor of said estate; the filing of the administrator's petition for authority to sell the real property, and the further proceedings in that regard, including the order of September 12, 1941, authorizing the admin-

istrator to borrow money to pay delinquent taxes, as recited hereinabove; the borrowing of money by the administrator from Clara Oupor, the giving of a promissory note as evidence thereof, and the mortgaging of the property involved herein by said administrator to said Clara Oupor; the fact of the redemption of said lots 9 and 10 by said administrator; the proceedings in relation to the foreclosure of the Oupor mortgage; and the ultimate sale of the property by the sheriff of Josephine County to plaintiff Clara Oupor, now Jones.

After a hearing, the trial judge filed a memorandum opinion, holding in favor of plaintiffs. Therein he relied principally upon the decision in *Parrish v. Parrish,* 33 Or 486, 54 P 352. He held that, under Judge Norton's decision in White's suit to quiet title, White never became vested with the legal title to the property, but became "a trustee of the thing"—that is, the land itself. He stated that "Judge Norton's decision had the effect of recognizing that at least in equity, ownership remained in the grantor, Mrs. White, and upon her death by operation of law vested in her heirs, subject to probate, if it became necessary, in order to meet her debts." He was of the opinion that to take any other view "would operate as a matter of policy to defraud creditors of their rightful due." He said that the provision of Judge Norton's decree, which required White to convey the property to Mrs. White's heirs, was intended simply for the purpose of clearing the legal title of record as far as White was concerned. He said further that the evidence indicated that at the time when the probate court authorized White as administrator to mortgage the real property, the property was in imminent danger of being lost through foreclosure for delinquent taxes. He held that, in

authorizing a mortgage of the property, the judge was merely exercising powers of the probate court, and also that, incidentally, he was "giving effect to Judge Norton's decision to the effect that the creditors were entitled to their day in court," and that such decision was entirely consistent and harmonious with *Parrish v. Parrish,* supra. He was of the opinion that the estate had an interest in the property, subject to probate. He held that plaintiffs had failed to establish title by adverse possession; that the evidence clearly indicated that plaintiffs Wiederhold and Mrs. Boren had purchased their respective properties in good faith and without knowledge of any rights of the defendants, save as disclosed by the public records; that there was no evidence that those persons had examined their abstracts of title or used any great amount of care to protect their own interests; that they had made valuable improvements upon their property, but that there was no evidence that any of the defendants were aware that such improvements were being made or had acquiesced therein, unless one could say that mere lapse of time without inquiry constituted acquiescence. The court's conclusion from his expressed views was that plaintiffs were the owners of the respective properties claimed by them, having derived title through the mortgage foreclosure and sale thereunder.

Decree was entered accordingly, and defendants appeal.

■ It is contended that the court erred in holding that Ella White owned an interest in the real property, subject to the claims of creditors, subsequent to the execution and delivery of her deed to E. E. White. As authority, counsel cite 65 C. J. 566, Trusts, but the cited matter has reference only to estates or interests remaining in or reverting to the creator of an express

trust, and has nothing to do with constructive trusts. The trial court, as stated, based his decision upon *Parrish v. Parrish*, supra, 33 Or 486, 54 P 352. In that case, a young wife had induced a very old husband to convey his real property to her, by fraudulently inducing him to believe that it was necessary for her to have the legal title to enable her to manage such real property expeditiously and advantageously for him. The suit was brought after the death of the husband by his heirs and personal representatives against the widow for an accounting, and to have her declared a trustee of the property, which, it was alleged, she had acquired from her husband either directly or indirectly for the use and benefit of such heirs. It was held that, while a deed of absolute conveyance, unambiguous in its terms, must be presumed to have expressed the intent of the parties as of the time of its execution, such presumption can never prevail where fraud vitiated the conveyance itself; that the evidence indicated clearly that Mrs. Parrish designed that the property should eventually inure to her own benefit through the various transfers which she was instrumental in causing to be effected; and that she had induced her husband to believe all along that she was managing and carrying on his business—not hers—with his assets, and held the legal title for purposes of business convenience only. It was held further that, but for Mrs. Parrish's fraudulent devices, the legal title which she had persuaded her husband to transfer to her would have remained in him; that, in respect of such property, she was a trustee ex maleficio for the purpose of working out equity in the premises; that the heirs were entitled to such property by right of inheritance from Mr. Parrish; and that, despite her perfidy, Mrs. Parrish's right to claim a widow's dower therein

had not been forfeited by any rule of law known to the court.

> "In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never perhaps have had any legal estate therein; and a court of equity has jurisdiction to reach the property either in the hands of the original wrongdoer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved from the trust. * * * " 4 Pomeroy, Equity Jurisprudence, 5th ed. § 1053.

But defendants argue that White held as trustee ex maleficio for the heirs, and not for his wife. They insist that the law is uniform that when a trustor conveys real property in trust and reserves no control over it, he retains no interest which might be subjected to the claims of his creditors. Here, again, they are speaking of express trusts and not of trusts ex maleficio. This is obvious, not only from counsel's language, but from the cases which they cite as authority. These are *Allen v. Hendrick,* 104 Or 202, 206 P 733, and *Coston v. Portland Trust Company et al.,* 131 Or 71, 278 P 586, 282 P 442, both of which dealt with express trusts. The point is that, in trusts ex maleficio, as said in *Parrish v. Parrish,* supra, at page 504, the fraud "vitiates the conveyance itself." That being so, and applying that principle to the case at bar, White's

fraud vitiated, that is to say, invalidated Mrs. White's deed to him, and therefore, upon her death, her real property vested in her heirs by right of inheritance. The authorities hold that a trustee ex maleficio holds the property under a constructive trust for the transferor. Restatement, Restitution, 673, § 166.

The findings of fact, and, indeed, the whole file in White's suit against Mrs. White's heirs to quiet title, are before us herein as exhibits. There was a specific finding by Judge Norton therein to the effect that White, under stated circumstances comprising all the elements of fraud, represented to his wife that, if she would convey the real property to him, he would, upon her death, immediately transfer and convey it to her children. Judge Norton's decree invalidated the deed, and had the effect of rendering the real property subject to the claims of Mrs. White's creditors. The record indicates that there were, in fact, some creditors, including White himself. The circumstances, therefore, gave colorable justification to White's action in taking out letters of administration upon his wife's estate.

■ The defendants, as owners of the land, were bound to take notice of the county's lien thereon for unpaid taxes. Moreover, upon the filing of the administrator's petition for authority to sell the land to raise money for payment of the taxes, they received actual notice of the tax delinquency. O. S. Blanchard and J. E. Vincent, two of the defendants herein, appeared in that proceeding, as stated above, and vigorously objected to the granting of an order of sale, on the grounds that defendants herein were the owners of the property and that the estate had no interest therein. The objections were not passed upon by the court, nor was the petition to sell the real property allowed, but, after the matter had been transferred to the circuit court, that court,

upon hearing the administrator's second petition for authority to sell, authorized him to borrow money "for the purpose of paying the taxes against said property and to make redemption before the expiration thereon becomes final," and to execute a mortgage upon the property as security therefor. The order was dated September 12, 1941. It recited that the period of redemption from the delinquent tax sale would expire on September 13, 1941, so there appeared to be only one day's time left for redemption before the property would be irrevocably lost to the owners.

The administrator proceeded to borrow the necessary money from his daughter, the plaintiff, Mrs. Oupor, now Jones, and gave her a mortgage upon the real property as security. The defendants, in their brief, have made serious aspersions against Mrs. Jones, charging her with having had full knowledge of and having participated in her father's schemes in relation to the property. They say, in part:

"White's daughter is charged with knowledge of the law and facts. Of course, she carries on with the pretense of honesty but she was desperately trying to get property, which, up to that time had escaped them. She knew about the double dealing her father had engaged in to get a deed from Ella White, how he refused to keep his promise to his wife, how he deeded part only to the heirs, reserving a life estate, how her father tried in a suit to take title to all, and how the Court (Norton) stopped him and ordered him to convey to the Vincent heirs. These matters were of record. So when in pursuance again, of their designs to get this property at any cost, she saw her father trying to probate an estate that did not exist, she knew the whole thing wreaked with fraud and deception and that she would stand to win all if she loaned her father a small amount of money to pay taxes which he should

have paid. This, of course, was a redemption or payment. She became the life tenant's agent for payment of taxes. * * *''

■ Quite apart from the question of the relevancy of the foregoing in the instant case, it is to be observed that there is no evidence in the record that Mrs. Oupor was a party to her father's knavery. She was at that time a married woman, living in her own home and not in her father's, and the mere fact that she was her father's daughter raises no presumption that she was a conspirator in his unlawful schemes.

■ Mrs. White's heirs, their respective spouses, and Mr. and Mrs. Blanchard were made defendants in the mortgage foreclosure suit. Mr. and Mrs. Blanchard, as has been stated, entered into a written stipulation with Mrs. Oupor to the effect that, if they made no appearance in the cause, the plaintiff might take a decree, provided she took no money judgment against them. The other defendants defaulted. We are of the opinion that the defendant, Mrs. Oupor, now Jones, became the owner of the real property in suit by virtue of her purchase thereof at sheriff's sale under foreclosure of her mortgage. The other plaintiffs deraigned their title through her.

■ It is suggested by defendants that the court erred in holding that it was not White's duty to pay the taxes upon the real property. A tenant for life is bound to pay the current taxes, if the estate is sufficient for that purpose. *Abernethy v. Orton,* 42 Or 437, 441, 71 P 327; Annot., 126 ALR 862. This rule applies to tenants by curtesy, 15 Am Jur 288, Curtesy, § 29, and by dower, 17 Am Jur 710, Dower, § 55; Annot., 17 ALR 1398, 94 ALR 320. Before dower or curtesy has been assigned, however, the person entitled thereto has no interest subject to being taxed as an estate in lands, and, gen-

erally, he should not be required to pay taxes levied between the consummation of the right and the assignment thereof. 17 Am Jur 710, Dower, § 55, Note 10; *Underground Electric R. Co. v. Owsley,* CCA2d, 196 F 278, 40 LRA NS 609. White's curtesy was never admeasured or assigned to him.

■ The amended complaint alleged that plaintiffs were the owners of the property in suit, and, specifically, that they acquired title by adverse possession. Usually, such specific allegations would be held to control and limit the general allegation of ownership, and would become plaintiffs' theory of the case. 41 Am Jur 349, Pleading, § 81, note 10. Plaintiffs' right to relief, however, depended upon the strength of their own title and not upon the weakness of that of their adversaries. 44 Am Jur 69, Quieting Title, § 83. As it turned out, their evidence established their title more adequately than proof of adverse possession would have done. Under those circumstances, it would be inequitable for the court of its own motion to raise any question of insufficiency of the evidence to sustain plaintiffs' theory of the case. Their general allegations of ownership and their prayer for the quieting of their title and for general relief were a sufficient basis for the decree.

The decree is affirmed. No costs to any party.