Argued August 31, affirmed December 26, 1978

TAB ENTERPRISES OF BEND, INC., *Respondent,*
*v.*
HEARE et ux, *Appellants.*
(No. 19831, CA 10261)

588 P2d 671

Paul J. Speck, Bend, argued the cause and filed the briefs for appellants.

Owen M. Panner, Bend, argued the cause for respondent. With him on the brief was Robert L. Nash, Bend.

Before Schwab, Chief Judge, and Gillette and Roberts, Judges.

GILLETTE, J.

## GILLETTE, J.

Defendants appeal from a decision of the trial court in a declaratory judgment action holding that plaintiff is the rightful owner of certain real property fronting on the Deschutes River in Woodriver Village, a subdivision south of Bend, Oregon. We affirm.

The focus of this dispute is a narrow strip of land bordered by a rimrock ledge on the east and extending into the Deschutes River to the west. Plaintiff is the owner of the Woodriver Village subdivision which is adjacent to property owned by defendants. The disputed area borders on the property of both parties and has been platted as part of the common area of Woodriver Village. Both parties acquired their property through a chain of title that originated in a common grantor, Benson.

The majority of the facts are not in dispute. The chain of title from the parties' common original grantor, Benson, is as follows:

### BENSON

| Plaintiffs Chain of Title | Defendants Chain of Title |
|---|---|
| Blay 5/27/46 | Harter 6/14/43 |
| Zietz 1/23/51 | Evans 4/26/60 |
| Merrifield 6/18/53 | Fox 11/29/61 |
| Brandis, et. al. 11/27/72 | Heare 10/6/70 |
| Tab Enterprises of Bend, Inc. 11/20/72 | |

The original grant from Benson to Harter (defendant's predecessor) describes the property in part as:

> "Beginning at a rimrock ledge which is approximately 200 feet south of the northeast corner of said Section 7; *thence following said rimrock ledge in a southwesterly*

*direction to its intersection with the thread of the Deschutes River;* thence southerly along the thread of the Deschutes River to its intersection with the south line of the North one-half of the Northeast Quarter of said Section 7." (Emphasis added.)

This description contains an error: the rimrock ledge it refers to never intersects the Deschutes River. This impossible description is consistently used in the chain of title leading to Fox.

The deed from Benson to Blay, plaintiff's predecessor in interest, provided in part:

"* * * that part of the North Half of the Northeast Quarter (N½ NE¼) of section seven (7), lying south and east of the Deschutes River *save and except* that portion which has heretofore been deeded by the grantors herein, and which is more particularly described as follows:" (Emphasis added.)

The deed proceeds to describe a piece of property which has as one of its borders the nonexistent point where a thread of the Deschutes River intersects the rimrock ledge.

In January of 1963, defendants executed an earnest money agreement with Earl and Alice Fox to purchase approximately ten acres of land in Deschutes County. The boundaries of the unimproved land were to be determined by a survey. The completed survey served as the basis for the property description agreed to by the parties in the contract of sale.[1] The legal descrip-

---

[1] The description in the contract of sale provides:

"A portion of the NE¼ of the NE¼ of Section 7 and the NW¼ of the NW¼ of Section 8, Township 18 South, Range 12 E.W.M., *more particularly described as follows: Beginning at the SE corner of the NE¼ of the NE¼ of Section 7, Township 18 South, Range 12, E.W.M., thence North 2 degrees 27' East for a distance of 129.70 feet; thence North 19 degrees 26' West for a distance of 110.80 feet; thence North 88 degrees 44' West for a distance of 552.20 feet; thence due North for a distance of 200.50 feet; thence North 88 degrees 44' West for a distance of 510 feet more or less to the Rimrock Ledge above the Deschutes River; thence following the said Rimrock Ledge in a Southwesterly direction to the West Boundary of the NE¼ of the NE¼ of Section 7; thence Southerly along said West boundary to the SW corner of the

tion of the property in those documents does not include the river front property erroneously described in the previous deed in the chain of title and subject of the present dispute between plaintiff Tab Enterprises and defendants. Defendants conceded in their depositions that at the time of the Fox purchase they did not believe they were acquiring any river frontage. They had never spoken to the Foxes about purchasing any land on the Deschutes River.

The Foxes agreed that defendants would draw up the deed upon the completion of the sale. Defendants' attorney subsequently sent a deed to the Foxes which they signed. The deed is set out in the margin.[2] The description under the "Warranty Deed" portion of that

NE¼ of the NE¼ of said section 7; thence Easterly along the South boundary to the point of beginning, all in Deschutes County, Oregon. "This sale includes the sale and transfer of five acres of water rights in the Central Oregon Irrigation District, said water rights being appurtenant to the above described property."

[2] The deed provides in part:

### "Warranty Deed

"KNOW ALL MEN BY THESE PRESENTS, that Earl Fox and Alice E. Fox, husband and wife, hereinafter called the grantors, for and in consideration of SIX THOUSAND & NO/100 DOLLARS, which is the true and actual consideration for this transfer, to grantors paid by Harvey H. Heare and Nell V. Heare, husband and wife, hereinafter called the grantees, do hereby grant, bargain, sell and convey unto the said grantees and grantees' heirs, successors and assigns, that certain real property, with the tenements, hereditaments and appurtenances thereunto belonging or appertaining, situated in the County of Deschutes, State of Oregon, described as follows, to-wit:

"A portion of the N½ of Section 7 and the NW¼ of the NW¼ of Section 8, Township 18 South, Range 12 E.W.M., DC 10, more particularly described as follows: Beginning at the SE corner of the NE¼ of the NE¼ of Section 7, Township 18 South, Range 12, E.W.M., thence North 2 degrees 27' East for a distance of 129.70 feet; thence North 19 degrees 26' West for a distance of 110.80 feet; thence North 88 degrees 44' West for a distance of 552.20 feet; thence due North for a distance of 200.50 feet; thence North 88 degrees 44' West for a distance of 510 feet more or less to the Rimrock Ledge above the Deschutes River; thence following the said Rimrock Ledge in a Southwesterly direction to the West Boundary of the NE¼ of the NE¼ of Section 7; thence Southerly along said West boundary to the SW corner of the NE¼ of the NE¼

document comports with the land previously described in the dealings between the parties. However, the italicized quitclaim language was not present in the survey's description of property the Foxes proposed to sell to defendants or the contract of sale upon which the former was based. Fox testified at his deposition that he did not read the deed before he signed it. Fox believed the legal description corresponded with that used in the survey and contract of sale.

The defendants testified at their deposition that the quitclaim provision was added as a direct result of a title search. This search disclosed the ambiguity or impossible description in their vendor's chain of title. Defendants believed the property was unclaimed and hoped to acquire it. They attempted unsuccessfully to pay taxes on the property in November, 1974, and subsequently. The assessor's office told defendants that the property was part of plaintiff's subdivision, Woodriver Village. Fox testified at his deposition that he had never owned the property. The trial court found that, because the rimrock does not intersect the river, no title to the disputed area could have passed in the original grant from Benson to Harter, the Foxes' predecessor in interest. Thus, the disputed property was never owned by the Foxes and could not have been conveyed by them to defendants.

■ The responsibility of the court in construing a deed is to ascertain and give effect to the intentions of the parties as found in the language of the instrument and

---

of said Section 7; thence Easterly along the South boundary to the point of beginning,

"Together with five acres of irrigation water.

*"The grantors also grant and quit-claim to the grantees, without warranty of title, all their right, title and interest in and to the premises lying and being between the above described lands and the middle of the Deschutes River, being bounded on the North by a Westerly continuation of the North boundary of the above described premises, and being bounded on the South by a Westerly continuation of the South boundary of the above described premises."* (Emphasis added.)

The property purportedly quit-claimed to defendants is the subject of the present dispute.

the circumstances attending its execution. *Wirostek v. Johnson,* 266 Or 72, 511 P2d 373 (1973). There is no evidence in the record which sheds any light on what Benson and Harter intended by the use of the nonexistent point of intersection between the Deschutes River and the rimrock ledge. ORS 93.310 provides:

> "The following are the rules of construing the descriptive part of a conveyance of real property, when the construction is doubtful, and there are no other sufficient circumstances to determine it.
>
> "(1) Where there are certain definite and ascertained particulars in the description, the addition of others, which are indefinite, unknown or false, does not frustrate the conveyance, but it is to be construed by such particulars, if they constitute a sufficient description to ascertain its application.
>
> "* * * * *."

■ The trial court found the property as described in the Benson-Harter deed to be a sufficient description after rejecting the impossible point of intersection. This was appropriate because, by eliminating any reference to the Deschutes River — an "impossible particular" in that it never intersects the rimrock — it was still possible to identify a completely enclosed parcel of land; *i.e.,* a parcel whose western boundary was the rimrock running roughly parallel to the river. This left unconveyed the parcel in dispute here, *i.e.,* the parcel between the rimrock and the Deschutes. *See Hayden v. Brown,* 33 Or 221, 53 P 490 (1898).

■ The original Benson deed was inadequate to convey title to the property lying between the rim and the Deschutes River. As a result, Benson continued as the owner of the disputed property at the time of the Benson-Blay deed. This latter deed granted Blay, plaintiff's predecessor, title for that portion of the North Half of the Northeast Quarter (N½NE¼) of Section Seven (7), lying south and east of the river, *except that previously conveyed away.* (Emphasis added.) Since the disputed property was not part of the Benson-Harter conveyance, it necessarily passed in

the subsequent grant to Blay and ultimately to plaintiff.

The judgment of the trial court that defendants have no right, title, or interest in the disputed lands is affirmed.