Argued and submitted February 8, reversed and remanded June 15, 2005

Robert J. COUSSENS
and Susan Jean Coussens,
co-trustees of the Robert J. Coussens Revocable Trust
U/A dated July 11, 2002;
Jack A. Erickson;
Contractors, Inc.,
an Oregon corporation;
Michael Burmeister-Brown; Susan Burmeister-Brown;
Robert L. Bailey; Barbara S. Bailey;
Linda A. Hutchins,
Trustee of the Linda A. Hutchins Revocable Trust
u/a/d 8/16/93;
Michael Thayer; Byron E. Thompson,
M. Patricia Thompson; William B. Boone;
Madeline F. Boone and the William B. Boone and Madeline
F. Boone Trusts; Barbara B. Gray;
Michael S. Gray; Claudia S. Gray; Scott Donald Gray;
Steven John Gray; Jodith M. Teetz; Allen K. Bechtel;
Janet Lynn Bechtel; Virginia Burns; Robert S. Burns;
Linda Burns; George P. Kane and Shirley K. Kane,
Trustees of the George P. Kane Living Trust
and the Shirley K. Kane Living Trust;
Patrick C. Hegrenes and Patricia J. Hegrenes,
husband and wife;
Barbara J. McMinn; Racker Investment, LLC;
Shoaib Tareen; Catherine A. Silgas;
Elaine Lucretia Murphy; William L. McCormack;
Darlene T. McCormack, Trustees;
W.L. McCormack and D.T. McCormack,
Trusts u/a/d 5/11/98;
Donald A. Kessler; Marilyn M. Kessler; Kenneth L. White;
Ann O. White; Reiersdale Development Inc.;
Florence T. Dolan; Patrick L. Radecki; Linda Ann Radecki;
Catherine Brands; Elizabeth Brands; Julianne Brands;
Julie E. Brands; David C. Brands; John G. Connors;
and Kathy M. Connors,
*Respondents,*

*v.*

Irving P. STEVENS
and Jeanette E. Stevens,
*Appellants.*

032118; A123633

113 P3d 952

Richard M. Stephens argued the cause for appellants. With him on the briefs was Groen Stephens & Klinge LLP.

James N. Westwood argued the cause for respondents. With him on the brief were Amy Edwards and Stoel Rives LLP.

Before Linder, Presiding Judge, and Haselton* and Ortega, Judges.

HASELTON, J.

---

* Haselton, J. *vice* Ceniceros, S. J.

## HASELTON, J.

Defendants appeal from a judgment quieting title in plaintiffs to a strip of land between Ocean Avenue and the ordinary high tide line of the Pacific Ocean in the City of Cannon Beach. Defendants assign error to the trial court's allowance of plaintiffs' motion for summary judgment, arguing that plaintiffs failed to prove the strength of their titles because, *inter alia*, the relevant plat map establishes Ocean Avenue as the western boundary of plaintiffs' lots.[1] We conclude that plaintiffs' lots are bounded on the west by Ocean Avenue and that, therefore, the trial court erred in granting summary judgment. Accordingly, we reverse.

This case arose from a disagreement among the parties over a proposed sand grading and vegetation management plan for the disputed area. Plaintiffs own the westernmost lots in the Elk Creek Park subdivision, which is laid out adjacent to Ocean Avenue as it runs parallel to the coastline between Washington and Harrison streets. Defendants own oceanfront property immediately south of Elk Creek Park. The juxtaposition of the parties' properties and the disputed area is roughly as is shown on the following map:[2]

---

[1] Defendants also assign error to the denial of their motion to strike certain exhibits to an affidavit submitted in support of plaintiffs' motion for summary judgment. We reject that assignment without discussion.

[2] The map is not to scale and does not depict all elements shown on the Elk Creek Park plat map or relevant tax assessors' maps. It is intended only as an aid to the reader.

In 1983, defendants purchased quitclaim deeds to the disputed area from the heirs of one of the original owners of the disputed area. They recorded those deeds with the county and began receiving and paying tax assessments. In 1988, defendants filed an action to quiet title to a large swath of land described as follows:

"Government Lot 1, Section 30, Township 5 North, Range 10 West, Willamette Meridian, Clatsop County, Oregon, EXCEPTING THEREFROM the following:

"(1)   That portion within the plat of Brooklyn;

"(2)   *That portion within the plat of Elk Creek Park*;

"(3)   Any portion lying below the ordinary high water mark of the Pacific Ocean."

(Emphasis added.) Defendants did not name plaintiffs individually as defendants in that action. Rather, they identified as defendants in that action "all persons or parties unknown claiming any right, title, lien or interest in the property described in the complaint herein."

In the 1988 litigation, none of the present plaintiffs was personally served with the complaint. Rather, service was by publication. None of the present plaintiffs appeared to defend in that action. Ultimately, defendants obtained a default judgment quieting title to "Government Lot 1 * * * *excepting therefrom * * * [t]hat portion within the plat of Elk Creek Park.*" (Emphasis added.)

This litigation was triggered when, in 1999, plaintiffs and others formed the Ocean and Laurel Sand Management Association in order to create a dune grading and vegetation management plan that would include the area in dispute here, *i.e.*, west of Ocean Avenue between the terminuses of Harrison and Washington streets. At that time, apparently because of the 1988 default quiet title judgment, the City of Cannon Beach considered defendants to be the owners of the disputed property. The city therefore determined that defendants' approval of the dune grading plan was required. The parties could not, however, reach agreement as to certain conditions of the plan.

Plaintiffs then filed this action to quiet title, claiming title to the westernmost lots in Elk Creek Park and alleging that those lots extended "to the mean high water line of the Pacific Ocean, subject to the rights of the public in and to Ocean Avenue as dedicated on the plat dated August 6, 1903." Plaintiffs subsequently moved for summary judgment, arguing that the language of the dedication accompanying the 1903 plat of Elk Creek Park established their titles as extending to the mean high tide line, despite the fact that the plat map shows Ocean Avenue as located to the west of their lots.

Defendants opposed that motion, arguing that they held superior title to the disputed land under either the 1988 default quiet title judgment or by adverse possession.[3] Defendants also disputed plaintiffs' interpretation of the plat and subsequent conveyances. In particular, as amplified below, defendants argued that, in creating and conveying Elk Creek Park, the original owner, Otto Kraemer ("Kraemer"), intended to and did reserve for himself the land west of Ocean Avenue. Thus, defendants reasoned, plaintiffs' properties extend no further than the centerline of Ocean Avenue.

The trial court granted plaintiffs' motion, determining "as a matter of law that there was no reservation by Otto Kraemer on the Plat of the Elk Creek Park subdivision * * *." The trial court subsequently entered judgment quieting title in plaintiffs "to [the] mean * * * high water line of the Pacific Ocean subject to the rights of the public in and to Ocean Avenue as dedicated on the Elk Creek Park Plat * * *." Defendants appeal.

In reviewing the allowance of summary judgment, we determine whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. *See Kluge v. Oregon State Bar*, 172 Or App 452, 457, 19 P3d 938 (2001); *Dimeo v. Gesik*, 164 Or

---

[3] In opposing summary judgment, defendants conceded that the grantors of their quitclaim deeds did not, at the time of those deeds, own any of the property in question. However, defendants contended that, regardless of the substantive effect of the quitclaim deeds, they were, nevertheless, entitled to ownership of the disputed strip by virtue of the 1988 default quiet title judgment and that plaintiffs could not collaterally attack that judgment in this case.

App 567, 569, 993 P2d 183 (1999); ORCP 47 C. We view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the nonmoving party, here, defendants. *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997).

■        To secure a judgment quieting title, plaintiffs must prove that they have a substantial interest in, or claim to, the disputed property and that their title is superior to that of defendants. ORS 105.605; *Faw v. Larson*, 274 Or 643, 646, 548 P2d 495 (1976); *Rohner et ux v. Neville*, 230 Or 31, 365 P2d 614 (1961); *Jones et al v. Jackson et al*, 195 Or 643, 659, 246 P2d 546 (1952). While that standard "does not require the plaintiff's title to be above reproach," *Rohner*, 230 Or at 39, it does require that plaintiffs prevail on the strength of their own title as opposed to the weaknesses of defendants' title. *Faw*, 274 Or at 646; *Jones*, 195 Or at 659 ("Plaintiffs' right to relief, however, depended upon the strength of their own title and not upon the weakness of that of their adversaries."). Accordingly, we must determine whether plaintiffs have established, as a matter of law and uncontroverted fact, the requisite strength of their title.

On appeal, the parties essentially raise the same arguments presented to the trial court. Plaintiffs argue that the Pacific Ocean is the western boundary of their lots. They contend that the language of their deeds and the plat dedication is evidence that Kraemer intended to convey the land west of Ocean Avenue to plaintiffs' predecessors in interest as part and parcel of their lots. Defendants, on the other hand, argue that the plat map, Kraemer's subsequent conveyance of identified blocks within Elk Creek Park to the Elk Creek and Cannon Beach Land Company, and the circumstances surrounding the 1903 platting and conveyance indicate that Kraemer intended to, and did, reserve the land west of Ocean Avenue for himself.[4]

---

[4] As evidence of Kraemer's alleged contemporaneous intent to reserve the strip of land west of Ocean Avenue, defendants rely, in part, on arguments that Kraemer, a lawyer, advanced on behalf of clients in a boundary dispute. *See* 176 Oregon Briefs 482 (1904), Appellants' Brief at 70-73, *Carlyle v. Sloan*, 44 Or 357, 75 P 217 (1904). Because we resolve this case in defendants' favor on the basis of the language of the 1903 deed and plat map, we need not, and do not, address the potential significance, if any, of arguments that Kraemer made as an advocate on behalf of his clients.

■ Our task is to discern and effectuate the intent of the grantor as evinced in the documents of conveyance and surrounding circumstances. *Tab Enterprises v. Heare*, 37 Or App 879, 884-85, 588 P2d 671 (1978). As amplified below, we agree with defendants that the 1903 deed from Kraemer to the Elk Creek and Cannon Beach Land Company conveyed only that land within the plat of Elk Creek Park that is located east of the centerline of Ocean Avenue, thus retaining for himself the area west of the centerline of Ocean Avenue. *See Oliver v. Klamath Lake Nav. Co.*, 54 Or 95, 102 P 786 (1909).

■ The historical circumstances attending the platting of Elk Creek Park and the relevant subsequent conveyances are undisputed. In 1903, Kraemer owned a parcel of property described as:

"Beginning at a point 500 feet South of Northeast corner of Lot One (1) in Section 30 Township 5 North Range 10 West; thence south on a straight line 1600 feet following the section line; thence West to the [P]acific Ocean; thence North with the meanders[5] of said Ocean to a point on the Pacific West of the place of beginning; thence East to the place of beginning[.]"

On August 6 of that year, Kraemer recorded a plat map and dedication with the Clatsop County Recorder's office that dedicated that parcel as Elk Creek Park. The dedication accompanying the plat map states, in relevant part:

"I, Otto J. Kraemer * * * do hereby dedicate the accompanying map or plat of Elk Creek Park, situated in the County of Clatsop, State of Oregon, the exterior boundaries of which are as follows:

"Beginning at a point 500 feet South of the Northeast corner of Lot One (1), in Section 30, Township Five (5) North, Range Ten (10) West; thence South on a straight line, 1600 feet, following the Section line; *Thence West to the Pacific Ocean*; Thence North with the meanders of said

---

[5] A meander line is a survey line demarcating the contours of a navigable body of water. Where a meander line of a water body is given as a boundary in a property description, the water itself, and not the meander line as shown on the government survey, is the true boundary of the riparian proprietor. *Weiss v. Oregon Iron etc. Co.*, 13 Or 496, 11 P 255 (1886).

Ocean to a point on the Pacific West of the place of beginning; Thence East to the place of beginning, containing thirty-six (36) acres, more or less.

"The lots and Works are numbered as indicated on said attached plat. The lots are of the sizes and the streets are of the widths as in figures herein shown, and I, the said Otto J. Kraemer, do hereby dedicate to the use of the public, as streets, the parcels of land designated and shown * * * as such."

(Emphasis added.)

The plat map shows Ocean Avenue near the western edge of the plat, running parallel to the Pacific Ocean. The plat map shows 14 blocks, containing between 12 to 18 lots each, laid out in two rows on either side of Roosevelt Avenue, which runs parallel to and one block inland from Ocean Avenue. Washington Avenue runs along the northern edge of the plat; on the south and east, the lots of the plat abut directly against the edge of the plat map. The so-called "president streets" of Adams, Jefferson, Madison, Monroe, Jackson, and VanBuren further separate the blocks of the plat from one another; those streets run east-west, intersecting with Roosevelt and terminating on the west at Ocean Avenue. There are no numbered lots or blocks laid out on the west side of Ocean Avenue.

The western edge of the plat map shows three squiggly lines adjacent to and west of Ocean Avenue. Evidence proffered by defendants indicates that such squiggly lines typically denote that the area platted is bordered by water but that, for purposes of the plat, the precise distance between the platted elements and the border is unimportant. Defendants also aver, in the form of an ORCP 47 E affidavit, that an expert surveyor would testify that (1) up to 39 feet of land existed between the meander line of the Pacific Ocean, as surveyed in 1856, and the western edge of Ocean Avenue, as laid out in the 1903 plat map; and (2) in 1903, the ordinary high tide line likely lay even farther to the west of the surveyed meander line.[6]

---

[6] There is, however, no indication of precisely how much farther west of the surveyed meander line defendants' expert would place the 1903 ordinary high tide line.

On the same day that Kraemer recorded the plat, he also conveyed property within the plat to the Elk Creek and Cannon Beach Land Company ("land company"), of which he was the secretary. The deed from Kraemer to the land company states that it conveyed:

> "all the following bounded and described real property, situated in the County of Clatsop and State of Oregon: All of blocks one (1), two (2), three (3), four (4), five (5), six (6), seven (7), eight (8), nine (9) Ten (10) eleven (11) twelve (12), thirteen (13) and fourteen (14) in Elk Creek Park in Clatsop County, Oregon, according to the duly recorded map and plat now on file in the office of the County Clerk of said County."

We note, in particular, that this conveyance is expressed in terms of specific "blocks" within the plat of Elk Creek Park. While the conveyance is qualified by the phrase *"according to the duly recorded map and plat"* (emphasis added), it does not explicitly state that all land within the plat is conveyed.

Subsequently, the land company conveyed the westernmost individual lots within Elk Creek Park to plaintiffs' predecessors in interest, by way of conveyances and deeds that referred to specific parcels within the plat of Elk Creek Park by lot and block number, *e.g.*, "Lots Four (4) Five (5) Six (6) and seven (7) in Block seven (7) 'Elk Creek Park', as laid out, platted and recorded by Otto J. Kraemer."

The foregoing facts are materially and functionally indistinguishable from those in *Oliver*—which, for the reasons that follow, is dispositive. In *Oliver*,[7] George Nurse was the original owner of land lying along the bank of the Link River as it entered Lake Ewauna. The river formed the western boundary, and the lake the southern boundary, of his property in the vicinity of the disputed tract. Nurse subsequently laid out the plat of the town of Klamath Falls on that land, locating a number of blocks immediately north of

---

[7] The factual circumstances of *Oliver* are described in somewhat greater detail and clarity in the briefs of the parties to the *Oliver* litigation than in the published opinion. *See* 231 Oregon Briefs 272 (1909), specifically Appellants' Abstract of Record, Appellants' Brief on Appeal, Respondents' Brief, and Appellants' Reply Brief, *Oliver v. Klamath Lake Nav. Co.*, 54 Or 95, 102 P 786 (1909). Accordingly, our description of the material facts in *Oliver* is supplemented by reference to the undisputed facts recited in those submissions.

Klamath Street, which was itself platted as running roughly perpendicular to the river and north of the lake shore. No lots were platted south of Klamath Street. Nurse then conveyed lots north of Klamath Street—some to the defendants' predecessors in interest—by deeds that described the property conveyed by lot and block number. However, Nurse never conveyed the land south of Klamath Street. The plaintiff later acquired deeds to the land south of Klamath Street by mesne conveyances from Nurse's heirs. Thus, the juxtaposition of the properties in *Oliver* was roughly as follows:

The dispute in *Oliver* concerned the defendants' attempt to build a wharf that extended over Klamath Street and into Lake Ewauna in a manner that would interfere with the riparian access rights appurtenant to the waterfront land south of Klamath Street claimed by the plaintiff. The plaintiff sued to enjoin construction of the wharf and the defendants' alleged interference with his access rights. Thus, the central issue in *Oliver* was whether the plaintiff actually owned the unplatted waterfront property south of Klamath Street. The defendants argued that that land, and its appurtenant riparian access and wharfage rights, was held by the defendants as owners of the platted lots north of Klamath Street.

The Supreme Court held that the plaintiff owned the land and wharfage rights south of Klamath Street. 54 Or at 97. The court reasoned that, where a platted street separates platted lots from waterfront property, a conveyance by lots and blocks of parcels located across the platted street from the waterfront does not convey the waterfront or any of its

appurtenant rights of access or wharfage. Rather, a convey-
ance "by lots and blocks" in that situation indicates an intent
by the owner to reserve the shoreline for the grantor:

> "[A] grantee's rights are circumscribed by the description in
> the deed, of which the town plat from which the description
> is taken, and to which reference is made, became a part;
> and that it is within the power of any grantor to sell his
> riparian rights separately from the lands to which appur-
> tenant, or in making a conveyance of such realty, expressly
> or impliedly, to reserve such riparian rights, *in reference to
> which the conveyances through which defendant deraigns
> title specifically describe the property by lots and blocks.
> This necessarily separated therefrom any riparian rights
> south of that street, leaving such riparian rights the property
> of the original grantor and his successors in interest.*"

*Id.* at 99 (emphasis added).

Here, Kraemer conveyed to the land company plat-
ted parcels located east of Ocean Avenue by reference to "lots
and blocks." *See* 200 Or App at 174. As in *Oliver*, that convey-
ance "necessarily separated" the blocks specifically identified
in that deed from the land west of Ocean Avenue, leaving the
latter parcel "the property of the original grantor and his
successors in interest." *Id.; accord Rasmussen v. Walker
Warehouse Co.*, 68 Or 316, 136 P 661 (1913).[8]

Plaintiffs argue, however, that *Oliver* is distinguish-
able because, "in contrast to the situation in *Oliver*, the gran-
tor in this case [Otto Kraemer] did not reserve any riparian
rights when he platted the property and conveyed to the Elk
Creek and Cannon Beach Land Company." However, as
noted, the grantor in *Oliver* (Nurse) did not expressly reserve
to himself any riparian rights. Rather, the court inferred

---

[8] In *Rasmussen*, the land in question was platted as an addition to the City of
Bandon. The plat showed the Coquille River to the north of the 17 lots in the plat,
with the side lines of the lots extending to the river and without any line demar-
cating the northern boundary of the lots. The court held that the conveyance of the
lots carried with it a conveyance of the tidelands touching the lots on the north:

> "In order to accomplish a separation, the intention to effect it must be made
> distinctly to appear. If the grant is in the ordinary form bounded only by the
> water, the land below, as well as that above the water, will pass."

68 Or at 326. Here, such an intention is "made distinctly to appear" by the location
of Ocean Avenue between plaintiffs' lots and the water.

such a reservation from the facts before it, which included (1) the conveyance by reference to "lots and blocks," and (2) the existence of the street separating those "lots and blocks" from the waterfront property. Those are the same circumstances that exist here. Thus, consistently with *Oliver*, the 1903 plat and deed expressed and effectuated Kraemer's intent to separate plaintiffs' lots from the waterfront property on the other side of Ocean Avenue and to retain ownership of that property.

The result in *Oliver*, and its reiteration here, comports with statutory presumptions governing the construction of deeds. *See* ORS 93.310.[9] Here, plaintiffs' assertion that Kraemer "did not reserve any riparian rights" necessarily rests on the premise that the 1903 deed conveyed *all* of the platted property, including the land west of Ocean Avenue, to the land company. That premise is erroneous. As noted, the deed did not explicitly convey the entire platted parcel; rather, it conveyed "[a]ll of blocks [1 to 14] in Elk Creek Park in Clatsop County, Oregon, *according to the duly recorded map and plat*." (Emphasis added.) Plaintiffs' "wholesale conveyance" assumption is premised on the italicized language—and that language is, at best, indefinite. Not only is the use of "according to" ambiguous, but the objects of that qualifying phrase—"the duly recorded *map* **and** *plat*" (emphasis and boldface added)—are inconsistent in their descriptions.

The reference to "plat" in the deed incorporates the dedication accompanying the plat map. That dedication describes Elk Creek Park as bounded on the west by the Pacific Ocean. *See* 200 Or App at 172-73. Conversely, the referenced map not only shows Ocean Avenue as the western boundary of the blocks conveyed, but also identifies specific dimensions for the lots and streets. That specification of dimensions could evince an intent to convey only blocks and lots that are, as the dedication also states, "of the sizes herein shown." In sum, the 1903 deed is hardly definite.

---

[9] Those presumptions are set out below. *See* 200 Or App at 178. Although they were enacted at statehood, General Laws of Oregon, Civ Code, ch X, title I, § 845, pp 358-59 (Deady 1845-1864), *Oliver* did not refer to those statutory presumptions.

That ambiguity, in turn, implicates statutory presumptions governing conveyances whose construction is "doubtful." ORS 93.310 provides, in part:

"The following are the rules for construing the descriptive part of a conveyance of real property, when the construction is doubtful, and there are no other sufficient circumstances to determine it:

"(1) Where there are certain definite and ascertained particulars in the description, the addition of others, which are indefinite, unknown or false, does not frustrate the conveyance, but it is to be construed by such particulars, if they constitute a sufficient description to ascertain its application.

"* * * * *

"(4) When a road or stream of water not navigable is the boundary, the rights of the grantor to the middle of the road, or the thread of the stream, are included in the conveyance, except where the road or bed of the stream is held under another title.

"(5) When tidewater is the boundary, the rights of the grantor to low watermark are included in the conveyance, and also the right of this state between high and low watermark.

"(6) When the description refers to a map, and that reference is inconsistent with other particulars, it controls them, if it appears that the parties acted with reference to the map; otherwise the map is subordinate to other definite and ascertained particulars."

We note, initially, that both ORS 93.310(4) and ORS 93.310(5), addressing road and tidewater boundaries respectively, require that we must first determine whether the road or the tidewater forms the boundary of plaintiffs' property. That question, however, is answered by reference to ORS 93.310(6), which requires adherence to the referenced map if that map "is inconsistent with other particulars" in the description of the property conveyed.[10] The plat map, therefore, rather than the metes and bounds description in the

---

[10] As noted, the relevant "inconsistency" here is between (1) the plat map, which shows Ocean Avenue as the western boundary of plaintiffs' lots and identifies specified dimensions for the lots and streets, and (2) the dedication accompanying the plat, which describes Elk Creek Park as bounded on the west by

plat dedication, governs the extent of plaintiffs' lots. That map shows Ocean Avenue as the western boundary of plaintiffs' lots. Plaintiffs' titles, therefore, extend to the centerline of Ocean Avenue, but no further. *Fahey v. City of Bend*, 252 Or 267, 269, 449 P2d 438 (1969) (stating rule that a deed "which described the land simply by the lot description" would include "one-half of the street adjoining" the lots conveyed); *Buell et ux. v. Mathes et ux.*, 186 Or 160, 184-85, 205 P2d 551 (1949) (where lots are sold with reference to plat showing highway as boundary of lots, grantee is presumed to take fee to center of highway, absent clear intent otherwise); *Fowler v. Gehrke*, 166 Or 239, 241, 111 P2d 831 (1941) ("[W]hen a road or street divides two estates, the title of the adjoining owners extends to the center of the * * * road or street[.]"). *Cf. McAdam et ux v. Smith et al*, 221 Or 48, 54-55, 350 P2d 689 (1960) (observing, in *dictum*, that, in some jurisdictions, where the grantor owns the entire underlying area and no land on the opposite side of the street, all of the underlying area passes to the grantee).[11] Thus, consistently with ORS 93.310(4) and (5), Kraemer reserved for himself title to the western half of Ocean Avenue and the land west of and between that street and the Pacific Ocean.

Finally, we reject, as unavailing, plaintiffs' reliance on two cases, *McAdam* and *Stott v. Stevens*, 127 Or App 440,

---

the Pacific Ocean. Again, the 1903 deed incorporates both these elements, by conveying specified blocks "in Elk Creek Park * * * according to the duly recorded map and plat."

[11] Although we are aware of no Oregon cases so holding, it appears that the general rule is that, when the conveyance is of parcels on opposite sides of the highway, both owned by the same grantor, the grantee takes title to the whole of the abutting highway area. *See* 49 ALR 2d 982 (1956) and cases cited therein. That permutation of the rule of construction expressed in ORS 93.310(4) is not implicated here, however, where plaintiffs took title to parcels lying on only one side of the roadway.

Similarly, we need not decide whether Oregon follows the corollary rule, urged by plaintiffs, that, "if a highway is established on the margin of a tract of land, and in that locality lies wholly on such tract, a grantee of the tract, or of a part thereof bounded on the highway, takes title to the farther edge of the highway unless an intention to the contrary sufficiently appears." 49 ALR 2d at 999. Here, a contrary intent is evident from the three squiggly lines west of Ocean Avenue on the plat map, indicating that the boundary of the *plat* is not Ocean Avenue but, instead, the Pacific Ocean itself (*i.e.*, the ordinary high tide line). Thus, Ocean Avenue was not "established on the margin" of the plat.

873 P2d 380 (1994). Plaintiffs cite *McAdam* for the proposition that a conveyance of land abutting tideland includes conveyance of the tideland if both were previously owned by the same grantor. Plaintiffs' reliance on *McAdam*, however, again begs the question at issue here of whether their title extends across the entire width of Ocean Avenue so as to abut adjacent tidelands.

In *McAdam*, upland adjacent to the Columbia River was conveyed without reference to the adjoining tideland, although the owner at the time of the conveyance owned both the upland and the tideland. The court held that, by virtue of the grantors' ownership of both the upland and the tideland, the conveyance of the upland included the tideland, despite the fact that the conveyance did not refer to the tidelands and despite the owner's previous conveyance to a third party of a strip running roughly parallel to the shore. The court found that the strip did not cut off the upland owner's rights to the tideland because portions of the upland property lay on either side of the strip previously conveyed. 221 Or at 59. Here, in contrast to *McAdam*—and again, like *Oliver*—the intervening roadway completely separated the blocks to which the 1903 deed referred from the waterfront property on the other side of the road.

■    *Stott* is also materially distinguishable. That case was a quiet title action, also against these same defendants, involving beachfront property just north of the Elk Creek Park plat. There, as here, the owners of the westernmost lots in a subdivision claimed ownership of the beachfront property immediately to the west of their lots. However, there is one all-important difference from this case: In *Stott*, no street intervened between the plaintiffs' lots and the boundary of the plat, which was identified as the meander of the Pacific Ocean. 127 Or App at 444. In reliance on those facts, we held that the plaintiffs' legal title extended to the line of ordinary high tide. *Id.* at 446. Here, however, the location of Ocean Avenue on the plat map separates plaintiffs' lots from the land west of Ocean Avenue, to which the waterfront right of ownership to the mean high tide line is appurtenant.[12]

---

[12] In *Stott*, we based our analysis and holding in part on a common-law presumption against "construing conveyances so as to create strips of land, the title to

In sum, plaintiffs do not hold title to the disputed property under the 1903 deed. Consequently, they were not entitled to summary judgment on their quiet title claim. *Du Val et ux v. Miller*, 183 Or 287, 292, 192 P2d 249 (1948) (decree quieting title reversed where court found plaintiffs failed to prove title in themselves when deed did not convey disputed strip).[13]

Reversed and remanded.

---

which would remain in abeyance for a lengthy period." 127 Or App 445 (citing *Nelson v. Vandemarr*, 281 Or 65, 68, 573 P2d 1232 (1978)).

Here, however, the application of that presumption would contradict the analysis and holding of *Oliver*. To the contrary, under *Oliver*, the "presumption" is that, when a grantor conveys "blocks and lots" that are separated by a roadway from a strip of waterfront property, the grantor intended to retain ownership of the waterfront strip unless there was also an express conveyance of that property. Thus, the title to the oceanfront strip here would *not* "remain in abeyance for lengthy periods." Further, the "strip" at issue here is not of insignificant dimensions. Running the length of seven city blocks, the area in dispute was, in 1903, as much as 39 feet in width and, due to accretion, may be as much as 125 feet in width today.

[13] Given our analysis, we need not address defendants' arguments regarding the relative strength of their alleged countervailing title. *Elwert v. Reid*, 70 Or 318, 139 P 918, *aff'd on reh'g*, 70 Or 325, 141 P 540 (1914) (holding that, in a suit to quiet title, where plaintiff had no title as against defendants, it was not necessary to determine defendants' rights to the property).