Argued and submitted November 23, 1993, reversed and remanded April 20, petition for review denied July 21, 1994 (319 Or 274)

Peter W. STOTT,
L. John Harrington, James F. Wells,
Kathryn E. Kendall, Josephine W. Hatfield,
Walter T. Williamson, III, Judith A. Garling,
William A. Jack and Evelyn J. Jack, as Trustees
of the William A. Jack Family Trust,
Susan U. Rick, John M. Ulrich, Warren J. Ulrich, Jr.,
and Jocelyn U. Groom, as Trustee of the
Separate Property Trust of Jocelyn U. Groom,
*Appellants,*

*v.*

Irving C. STEVENS
and Jeannette E. Stevens,
Husband and Wife,
*Respondents.*

Irving C. STEVENS
and Jeannette E. Stevens,
Husband and Wife,
*Third-Party Plaintiffs,*

*v.*

CITY OF CANNON BEACH,
State of Oregon, by and through its
Division of State Lands,
the Land Conservation and Development Commission,
and Parks & Recreation Division,
*Third-Party Defendants.*

(91-2248; CA A77993)

873 P2d 380

Jacob Tanzer argued the cause for appellants. With him on the opening brief were Bruce W. DeKock and Ball, Janik & Novack. With him on the reply brief were Sarah J. Ryan, Bruce W. DeKock and Ball, Janik & Novack.

Garry P. McMurry argued the cause for respondents. With him on the brief was Garry P. McMurry & Associates.

Before Warren, Presiding Judge, and Rossman and Edmonds, Judges.

EDMONDS, J.

## EDMONDS, J.

Plaintiffs appeal from an adverse judgment in their quiet title claim.[1] They assign error to the court's ruling that, at the time their property was platted in 1910, the grantors reserved property between their property and the Pacific Ocean and that defendants are the owners of that property. On *de novo* review, ORS 19.125(3), we reverse.

Plaintiffs are the present owners of residential lots 2 through 9 in block 1 of the Brooklyn Addition in Cannon Beach, originally platted by August and Sarah Becker. *See* Appendix. The western part of their property is on a bluff that overlooks the ocean. Defendants contend that, when the Brooklyn Addition was platted in 1910, the Beckers reserved a strip of property that has expanded by accretion between the western boundary of the plat and the ocean. Defendants claim ownership of the purported strip based on a quitclaim deed from an heir of the Beckers. Plaintiffs contend that the Brooklyn Addition borders the ocean.

In 1856, the United States government surveyed the area around Cannon Beach. The survey established Government Lot 1 (Lot 1). The survey shows Lot 1 extending west to the meander line of the ocean. The survey also established a meander corner at the northwest corner of Lot 1 and a meander line that denotes the boundary with the ocean. The parties agree that, in 1910, the high-water line came to the base of the bluff. Plaintiffs contend that, at times, it came even higher. The high-water line is significant because, in 1910, landowners claiming under federal patents owned seaward only to the high-water line, which is assumed to be the vegetation line. In 1935, the United States Supreme Court held that a federal patent conveyed title to land farther seaward, to the mean high-tide line. *State ex rel Thornton v. Hay*, 254 Or 584, 589, 462 P2d 671 (1969); *see Borax, Ltd. v. Los Angeles*, 296 US 10, 56 S Ct 23, 80 L Ed 9 (1935). The present distance from the western boundary of the Brooklyn Addition to the vegetation line is approximately 20 feet. The

---

[1] Plaintiffs also brought claims for nuisance and trespass, which were bifurcated for trial pending the outcome of the quiet title claim. Defendants' third-party claims against the State of Oregon and the City of Cannon Beach were also bifurcated pending the outcome of the quiet title claim. The judgment dismisses all pending claims either on the motion of the plaintiffs or because they are moot.

record indicates that, since 1940, a considerable amount of sand has been deposited on the Cannon Beach area. The bluff on which the western boundary lies is now buried under at least five feet of sand. The record indicates that the distance from the western boundary of the Brooklyn Addition to the present mean high-tide is approximately 380 feet.

In 1886, John Boysen filed for a homestead with the federal government, which included Lot 1. One month later, he conveyed all of his interest in the homestead application to August Becker.[2] In 1910, the Beckers platted the northwest portion of Lot 1 as the Brooklyn Addition. The plat refers to the northwest corner of the plat as the "gov [sic] meander corner." The 1856 survey established the distance between an adjacent section corner and the government meander corner as 891 feet. No monument establishing the meander corner can be located at this time. The distance from the adjacent section corner to the plat's initial starting point combined with the internal measurements of the plat extend along the northern boundary of Lot 1, 897 feet from the section corner to the northwest corner, or six feet more than the government survey. The western boundary of the plat takes a meandering course southward to the southwestern corner of the plat. The southwest corner of the plat lies six feet farther west than the northwestern corner. The parties agree that the government meander line is at least six feet east of the designated plat boundary.

Following the trial on plaintiffs' claim, the court said that the issue

"must be determined by finding whether or not the plat of Brooklyn Addition is bounded on the West by the Pacific Ocean. This requires determining whether the intent of the platters [the Beckers] was to convey to the Pacific Ocean or merely to the Westerly boundary of the plat."

It then reasoned that the Beckers' intent could best be determined by examining their conduct in platting other parcels in the Cannon Beach area. It observed that the Beckers had expressly platted to the ocean in other plats, and that in the Brooklyn Addition, there was no mention of the western boundary being the ocean. The court was also

---

[2] Boysen did not obtain his United States government patent until 1892.

impressed by the fact that there is a "heavy line" depicted on the western side of the plat. It concluded that the Beckers intended to reserve a strip of land west of the western boundary of the Brooklyn Addition.

■    Accreted land belongs to the owner of the land adjacent to the water. *See California ex rel State Lands Comm'n v. U. S.*, 457 US 273, 284, 102 S Ct 2432, 73 L Ed 2d 1 (1982). When the property conveyed is bounded by water, it is presumed[3] that the grantee intended to convey all the land that the grantee owned unless a contrary intent is clearly shown. *McAdam v. Smith*, 221 Or 48, 55, 350 P2d 689 (1960). When a property description in a legal document refers to a property description in another legal document, the reference is considered as if the description is incorporated therein. *Templeman et al v. Leigh*, 130 Or 24, 30, 278 P 989 (1929). A meander line in a description indicates that the water itself is the true boundary. *Seabrook v. Coos Bay Ice Co.*, 49 Or 237, 89 P 417 (1907). Therefore, a grant to the meander line is presumed to be a grant to the water. *Morse Bros., Inc. v. Wallace*, 78 Or App 138, 140 n 2, 714 P2d 1095, *rev den* 301 Or 165 (1986). Moreover, even if a description in a plat is ambiguous, there is a policy against construing conveyances so as to create strips of land, the title to which would remain in abeyance for lengthy periods. *Nelson v. Vandemarr*, 281 Or 65, 68, 573 P2d 1232 (1978).

■    We apply those rules to the evidence in this case. The plat describes its northwest corner as the government meander corner. That description evidences the Beckers' intent that the property platted was to extend to the ocean. That inference is supported by the fact that the western boundary of the plat is a meandering line and the southwest corner of the plat is six feet farther west than the northwestern corner. The fact that the internal measurements of the plat places the

---

[3] OEC 308 provides:

"In civil actions and proceedings, a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence."

The legislative commentary to this rule explains that, once a party invoking a presumption establishes the basic facts giving rise to it, the burden of establishing the nonexistence of the presumed fact shifts to the opposing party. Moreover, the commentary provides that all presumptions, whether legislatively or judicially created, must be treated in the manner prescribed by OEC 308.

northwest corner of the plat six feet farther west than the government meander corner does not create a contrary inference. The record indicates that it was the practice of the government surveyors to establish meander corners back from a bluff edge by as much as ten feet to avoid the corner from being lost because of erosion. There is evidence that, in 1910, the high-water mark extended nearly to the top of the bluff, which is also consistent with the location of the northwest corner of the plat at the ocean.

The evidence that persuaded the trial court is less compelling. The trial court found the "heavy line" along the western boundary "cartographically significant." The parties disagree as to whether the "wavy lines" on the plat represent the ocean tides or beach. The "heavy line" could be the result of the drafter's overlap between the plat's western boundary line and the high tide lines. The fact that other plats by the Beckers characterize the western boundary by a monument, the ocean, is not controlling. The Brooklyn Addition plat was surveyed by a different surveyor. It relies on a metes and bounds description and a map. It is equally as plausible that the surveyor of the Brooklyn Addition plat chose a different method of describing the same boundaries as it is that the Beckers intended to reserve a strip of land along the ocean in one plat and not the other. In the final analysis, the most persuasive fact is that the Brooklyn Addition plat makes an express call to the government meander corner, *i.e.*, the ocean. Based on all the evidence and the rules of construction, we find that the Beckers did not reserve a strip of land west of the land owned by plaintiffs.

Reversed and remanded for entry of judgment quieting title in plaintiffs.

# APPENDIX