# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 48

**APRIL TERM, A.D. 2025**

**April 24, 2025**

TETON COUNTY BOARD OF COUNTY
COMMISSIONERS,

Appellant
(Defendant),

v.                                                                                          S-24-0175

STATE OF WYOMING, BOARD OF
LAND COMMISSIONERS,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Michael K. Davis (Retired Justice), Judge*

*Representing Appellant:*
> Keith M. Gingery, Chief Deputy County Attorney, Teton County and Prosecuting Attorney's Office, Jackson, Wyoming. Argument by Mr. Gingery.

*Representing Appellee:*
> Bridget Hill, Wyoming Attorney General; Brandi Monger, Deputy Attorney General; James Peters, Senior Assistant Attorney General; Kate Gamble, Assistant Attorney General. Argument by Mr. Peters.

*Before FOX, C.J., and GRAY, FENN, and JAROSH, JJ., and SNYDER, D.J.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]    The State of Wyoming, Board of Land Commissioners, through the Office of State Lands and Investments (State Board), granted two separate Temporary Use Permits (TUPs) to permittees allowing them to use state land for specified purposes.  Subsequently, the Teton County Board of County Commissioners (County Board) issued abatement notices to the permittees.  The State Board initiated this action seeking a declaration that it and its permittees are not subject to county land use and development regulations and that the County Board lacked authority to enforce such regulations against the State Board and its permittees.  The parties filed cross-motions for summary judgment, and the district court granted summary judgment in favor of the State Board.  The County Board appeals.  We affirm.

*ISSUE*

[¶2]    The dispositive issue is whether Teton County's land use and development regulations are enforceable against the State Board and its permittees operating under a TUP.

*FACTS*

[¶3]    The Wyoming Constitution establishes the State Board and charges it with the "direction, control, leasing and disposal of lands of the state granted, or which may be hereafter granted for the support and benefit of public schools[.]"  Wyo. Const. art. 18, § 3; Wyo. Stat. Ann. § 36-2-101.  The State Board currently manages approximately 3.5 million surface acres and 3.9 million mineral acres of state land.[1]

[¶4]    Teton County is a political subdivision of the State of Wyoming whose powers are exercised by the County Board.  The Wyoming Legislature has granted county boards the authority to regulate land use within their counties.  Wyo. Stat. Ann. § 18-5-201(a).  Pursuant to this authority, the County Board has adopted comprehensive land use and development regulations for Teton County (Teton County LDRs).

[¶5]    Central to the controversy here is a parcel of state land located in Teton County and managed by the State Board.[2]  The State Board divided a portion of the parcel into nine separate tracts and issued TUPs on eight of those tracts.  Two TUPs were issued on June 2, 2022.  One was given to Basecamp Hospitality, LLC (Basecamp) and authorizes Basecamp to use Tract 9, consisting of approximately 4.76 acres of land, for "11 low-impact accommodations for single and multi-night vacation rental."  Another was awarded

---

[1] Eighty-six percent of these acres are managed to benefit public schools.
[2] This parcel is more particularly described as Section 36, Township 42 North, Range 117 West of the 6th P.M. in Teton County, Wyoming.

1

to Wilson Investments, LLC (Wilson) and granted Wilson the use of Tracts 2, 3, and 5, totaling approximately 9.7 acres, for a landscape construction yard and storage unit facility. Both permits contain a provision entitled "General Conditions" "8" which states, "Permittee shall observe all state, federal and local laws and regulations."[3]

[¶6]    On November 28, 2022, the County Board issued abatement notices to Basecamp and the State Board and Wilson and the State Board.  These notices asserted seven violations of the Teton County LDRs and demanded that Basecamp and Wilson remedy the violations and obtain all applicable county permits.[4]

[¶7]    The State Board commenced this action seeking permanent injunctive relief and declarations that the State Board and its permittees are not subject to the Teton County LDRs and that counties lack authority to enforce their land use and development regulations against the State Board or its permittees on state land.  The parties filed cross-motions for summary judgment.  After a hearing, the district court granted summary judgment to the State Board and denied the County Board's motion.  The County Board timely appealed.[5]

### STANDARD OF REVIEW

[¶8]    We review a grant of summary judgment de novo.  "This Court affords no deference to the district court's ruling and, instead, reviews a 'summary judgment in the same light

---

[3] In its brief, the County Board, at least implicitly, argues (1) language in the TUPs requires the permittees to comply with the Teton County LDRs; and (2) the TUPs issued in this case are not authorized under the State Board's own rules.  The question of whether the permittees are required to comply with the Teton County LDRs by virtue of the TUP language is not a question that can be raised by the County Board.  As the district court concluded, "because the [County Board] is not a party to the temporary use permit[, it] therefore lacks standing to enforce its terms." *See Peterson v. Meritain Health, Inc.*, 2022 WY 54, ¶ 22, 508 P.3d 696, 705 (Wyo. 2022) (to have enforceable rights under a contract, a party must have privity in the contract).  The question of the State Board's authority to issue TUPs was raised in a separate action brought by the County Board.  The district court in that case concluded that the County Board was not entitled to judicial review because "persons," not agencies, are entitled to judicial review of agency actions, and the County Board is an agency.  *See* Wyo. Stat. Ann. § 16-3-101(b)(i) (counties are "agencies" as defined by the Wyoming Administrative Procedure Act); Wyo. Stat. Ann. § 16-3-114 (aggrieved "person" may challenge agency action); *Basin Elec. Power Co-op., Inc. v. Dep't of Revenue, State of Wyo.*, 970 P.2d 841, 848 (Wyo. 1998).  That decision was not appealed and is not reviewable here. *See Osborn v. Painter*, 909 P.2d 960, 964 (Wyo. 1996) ("a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies'" (citations omitted)).

[4] The County Board also sent a letter to the State Board requesting that it revoke the TUPs.  The State Board did not revoke the TUPs.

[5] Citizens for Responsible Use of State Lands, Casper Mountain Preservation Alliance, LLC, Wyoming Outdoor Council, and Powder River Basin Resource Council (collectively CRUSL), and the Wyoming County Commissioners Association (WCCA) filed Amici Curiae briefs in support of the County Board's position; Basecamp filed an Amicus Curiae brief in support of the State Board.

2

as the district court, using the same materials and following the same standards.'" *Hurst v. Metro. Prop. & Cas. Ins. Co.*, 2017 WY 104, ¶ 8, 401 P.3d 891, 895 (Wyo. 2017) (quoting *Lindsey v. Harriet*, 2011 WY 80, ¶ 18, 255 P.3d 873, 880 (Wyo. 2011)). "Summary judgment can be sustained only when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law." *Rafter J. Ranch Homeowner's Ass'n v. Stage Stop, Inc.*, 2024 WY 114, ¶ 17, 558 P.3d 562, 569 (Wyo. 2024) (quoting *Gumpel v. Copperleaf Homeowners Ass'n, Inc.*, 2017 WY 46, ¶ 24, 393 P.3d 1279, 1289 (Wyo. 2017)); W.R.C.P. 56(c). "When, as here, the district court resolved the case by the grant and denial of cross-motions for summary judgment, 'both the grant and the denial of the motions for a summary judgment are subject to appeal' if the decision completely resolves the case." *Hurst*, ¶ 8, 401 P.3d at 895 (quoting *Lindsey*, ¶ 18, 255 P.3d at 880).

## DISCUSSION

[¶9]    The County Board argues that the district court erred when it concluded the Teton County LDRs do not apply to the State Board and its permittees.  It contends: (1) the plain language of Wyoming zoning statutes demonstrates that the legislature intended local land use and development regulations to apply to state lands under long-term leases and TUPS; (2) sovereign immunity is inapplicable to the question of whether the state must comply with zoning ordinances; and (3) even if immunity applies, this Court should apply one of two tests—the governmental/proprietary distinction test or a balancing of interest test—to conclude that the County Board can enforce its LDRs here.  The State Board counters that the district court was correct, "[T]he [State] Board is not subject to county land use regulations on state trust land by virtue of sovereign immunity."  We agree with the County Board—sovereign immunity is not implicated in a suit to enjoin the County Board from acting outside its statutory authority and seeking a declaration construing that authority. *See Simons v. Laramie Cnty. Sch. Dist. No. One*, 741 P.2d 1116, 1122 (Wyo. 1987) ("[S]overeign immunity as a doctrine in Wyoming does not apply to proceedings between segments of state government wherein declaratory judgment or administrative appeal provisions are available to determine respective rights and liabilities under constitutional provisions and statutory enactments."); *Rocky Mountain Oil & Gas Ass'n v. State*, 645 P.2d 1163, 1166 (Wyo. 1982) ("The defense of sovereign immunity cannot be raised by any of the parties to this action because the only purpose of the action is to obtain a determination of the 'rights, status and other legal relations' of appellants resulting from, or to result from, rules and decisions on the same matter by two separate state agencies . . . ."); *see also Sarasota Drs. Hosp., Inc. v. Sarasota Cnty.*, 396 So. 3d 648, 657–60 (Fla. Dist. Ct. App. 2024), *review denied sub nom. Venice HMA, LLC v. Sarasota Cnty.*, No. SC2024-1724, 2025 WL 511878 (Fla. Feb. 17, 2025), and *review denied*, No. SC2024-1722, 2025 WL 511883 (Fla. Feb. 17, 2025), and *review denied sub nom. Sarasota Cnty. v. Sarasota Cnty. Pub. Hosp. Dist.*, No. SC2024-1720, 2025 WL 511942 (Fla. Feb. 17, 2025).  However, we conclude that the State Board and its permittees are not subject to the Teton County LDRs.

*Are Teton County's land use and development regulations enforceable against the State Board and its permittees operating under a TUP?*

[¶10]   We begin our analysis by reviewing the relevant statutes.  "Our goal in interpreting statutes is to give effect to the legislative intent, which we do by looking to the plain language of a statute and considering all related statutes as a whole." *State v. Uinta Cnty. Assessor*, 2024 WY 106, ¶ 27, 557 P.3d 298, 305 (Wyo. 2024) (citing *Holding v. Luckinbill*, 2022 WY 10, ¶ 13, 503 P.3d 12, 17 (Wyo. 2022)).  "This Court's longstanding method of statutory interpretation begins by first determining if the statute in question is 'clear and unambiguous' or 'ambiguous or subject to varying interpretations.'" *Sinclair Wyo. Refin. Co. v. Infrassure, Ltd*, 2021 WY 65, ¶ 12, 486 P.3d 990, 994 (Wyo. 2021) (quoting *Ultra Res., Inc. v. Hartman*, 2010 WY 36, ¶ 69, 226 P.3d 889, 916 (Wyo. 2010)).  Language is "clear and unambiguous" when "reasonable persons" would agree as to its meaning. *Sinclair*, ¶ 12, 486 P.3d at 994 (quoting *Ultra Res.*, ¶ 69, 226 P.3d at 916) (citing *Parker Land & Cattle Co. v. Wyo. Game & Fish Comm'n*, 845 P.2d 1040, 1043 (Wyo. 1993))).  "When a statute is clear and unambiguous, the statute's plain language is given effect." *Sinclair*, ¶ 12, 486 P.3d at 994 (citing *Ultra Res.*, ¶ 69, 226 P.3d at 916; *Parker Land*, 845 P.2d at 1043).

## A.    Wyo. Stat. Ann. § 36-5-114(d)—Long-Term Leasing of State Lands

[¶11]   Wyoming statutes provide extensive guidance to the State Board in leasing state lands.  Title 36, Chapter 2 of the Wyoming Code establishes the State Board and grants it authority to manage state lands in accordance with article 18, section 3 of the Wyoming Constitution; Title 36, Chapter 5, governs leasing of state lands.  *See* Wyo. Stat. Ann. §§ 36-2-101 through -210 and 36-5-101 through -117.  Section 36-5-114(a) allows the State Board to lease "state lands for industrial, commercial and recreational purposes" for a term of "not more than seventy-five (75) years."  Section 36-5-114(d) requires the State Board to "promulgate rules and regulations implementing policies, procedures and standards for the long-term leasing of state lands for industrial, commercial and recreational purposes . . . including provisions requiring compliance with all applicable land use planning and zoning laws . . . ."  Wyo. Stat. Ann. § 36-5-114(d) (LexisNexis 2023).

[¶12]   The County Board argues that the language in § 36-5-114(d) applies equally to long-term leases and TUPs.  We do not agree.  The language in 114(d) clearly requires the State Board to promulgate rules "for the **long-term leasing** of state lands" and, as part of those rules, to require compliance with land use planning and zoning laws.  The statute makes no reference to TUPs.

[¶13]   The State Board has broad authority to manage state lands.  Specifically, Wyo. Stat. Ann. § 36-2-107(a) provides the Board "shall have the power and authority to promulgate and adopt rules and regulations not inconsistent with the laws of the state, as it may from

time to time deem necessary in the direction, control, disposition and care of all state lands . . . ." The State Board has adopted rules governing TUPs. Wyo. Off. of Lands & Invs., Rules & Regulations, Bd. of Land Comm'rs, Temporary Use Permits, ch. 14, § 3 (2001). While statutory references to TUPs are limited, they are found in Wyo. Stat. Ann. § 36-2-107(b)(iii) regarding receipt of payment for hunting, fishing, or recreational use of state lands pursuant to a TUP, and in Wyo. Stat. Ann. § 36-3-110(a)(ix) authorizing the State Board to collect filing fees for TUP applications. Accordingly, the legislature is aware that the State Board issues TUPs.

[¶14] Chapter 5 addresses "leasing" of state lands. Section 36-5-114(d) specifically applies to long-term leases of state lands. It mandates that the State Board promulgate rules and regulations for long-term leasing of state lands that include provisions requiring compliance with local zoning regulations. Wyo. Stat. Ann. § 36-5-114(d). There is no similar statutory requirement for TUPs. "[A] basic tenet of statutory construction is that omission of words from a statute is considered to be an intentional act by the legislature, and this [C]ourt will not read words into a statute when the legislature has chosen not to include them." *Spreeman v. State*, 2012 WY 88, ¶ 13, 278 P.3d 1159, 1163 (Wyo. 2012) (citation omitted). Had the legislature wanted to subject TUPs to the conditions set out for leases in § 36-5-114(d), it would have done so. *See, e.g.*, *Matter of U.S. Currency Totaling $14,245.00*, 2022 WY 15, ¶ 17, 503 P.3d 51, 56 (Wyo. 2022) ("Had the legislature intended to place exclusive jurisdiction over forfeiture proceedings in the district courts, it would have said so."); *WPX Energy Rocky Mountain, LLC v. Wyo. Dep't of Revenue*, 2022 WY 104, ¶ 33, 516 P.3d 449, 457 (Wyo. 2022) ("Had the legislature intended a broader . . . deduction" it could have structured the tax law differently.). The legislature has not imposed the local zoning compliance requirements on TUPs, and we will not read those obligations into the statutes.

## B.      Wyo. Stat. Ann. § 18-5-201—County Zoning Authority

[¶15] CRUSL and WCCA, Amici Curiae for the County Board, argue that a separate statutory provision requires the State Board to comply with the Teton County LDRs. They cite to Wyo. Stat. Ann. § 18-5-201(a), which states:

> **To promote the public health, safety, morals and general welfare of the county, each board of county commissioners may regulate and restrict the location and use of buildings and structures and the use, condition of use or occupancy of lands for residence, recreation, agriculture, industry, commerce, public use and other purposes in the unincorporated area of the county.** However, nothing in W.S. 18-5-201 through 18-5-208 shall be construed to contravene any zoning authority of any incorporated city or town. No zoning resolution or plan shall prevent any use or

5

occupancy reasonably necessary to the extraction or production of the mineral resources in or under any lands subject thereto. No board of county commissioners shall require that a land use or physical development be consistent with a local land use plan unless the applicable provisions of the local land use plan have been incorporated into the local zoning regulations. Nothing in W.S. 18-5-201 through 18-5-208 shall be construed to allow any board of county commissioners, through the establishment of minimum lot size requirements or otherwise, to prevent residential or agricultural uses authorized for land divisions that are exempt from subdivision requirements pursuant to W.S. 18-5-303(a)(i). No zoning resolution or plan shall regulate and restrict the location and use of buildings and structures and the use, condition of use or occupancy of lands for the use of a private school as defined in W.S. 21-4-101(a)(iii) in any manner different from a public school . . . .

Wyo. Stat. Ann. § 18-5-201(a) (LexisNexis 2023) (emphasis added). This provision grants county boards of commissioners the authority to regulate "unincorporated area[s] of the county." CRUSL argues that the state land at issue here is necessarily included in the "unincorporated area" of Teton County, and the County Board has the authority to regulate it. It asserts that the State Board and its permittees must comply with the LDRs. WCCA contends, because state land is not expressly excluded from § 18-5-201, the legislature intended all state land to be subject to county land use regulations.

[¶16]  Our rules of statutory construction require us to look at the statutes as a whole. "In discerning the legislature's intent, we construe 'all statutes relating to the same subject or having some general purpose' *in pari materia*," and we "giv[e] effect to every word, clause, and sentence." *Wyo. Guardianship Corp. v. Wyo. State Hosp.*, 2018 WY 114, ¶ 12, 428 P.3d 424, 431 (Wyo. 2018) (quoting *Redco Constr. v. Profile Props., LLC*, 2012 WY 24, ¶ 26, 271 P.3d 408, 415–16 (Wyo. 2012)). "Moreover, we strive to avoid an interpretation that . . . renders a portion of the statute meaningless." *Seherr-Thoss v. Teton Cnty. Bd. of Cnty. Comm'rs*, 2014 WY 82, ¶ 19, 329 P.3d 936, 945 (Wyo. 2014).

[¶17]  Wyo. Stat. Ann. § 36-2-107(a) grants the State Board

the power and authority to promulgate and adopt rules and regulations not inconsistent with the laws of the state, as it may from time to time deem necessary in the direction, control, disposition and care of all state lands, and to preserve the value of the land and to recognize the fiduciary duties of the state land office.

6

Wyo. Stat. Ann. § 36-2-107(a) (LexisNexis 2023).

[¶18] We must read § 18-5-201 (county zoning authority), § 36-2-107(a) (State Board authority over state lands), and § 36-5-114(d) (long-term leasing of state lands) together. We are mindful that "a county's authority 'to adopt a zoning ordinance is limited by state statute, and the general grant of power to [counties] to adopt zoning laws in the interest of public welfare does not permit the local governing bodies to override the state law and the policies supporting it.'" *Seherr-Thoss*, ¶ 24, 329 P.3d at 946 (citation omitted); *see also K N Energy, Inc. v. City of Casper*, 755 P.2d 207, 210–11 (Wyo. 1988) (citation omitted) (recognizing that municipalities have "only the authority conferred by the legislature" and that in "deciding whether authority has been granted to a municipality . . . we apply a rule of strict construction, resolving any doubt against the existence of the municipal power").

[¶19] If we were to read § 18-5-201 as the amici urge—giving counties an unrestricted ability to regulate state lands—we would limit § 36-2-107(a)'s grant of broad authority to the State Board to regulate state lands. We do not believe this is a result intended by the legislature. The legislature has determined when the State Board must require compliance with local land use and development regulations—that is, in its long-term leases of state lands. *See* Wyo. Stat. Ann. § 36-5-114(d) (instructing State Board to comply "with all applicable land use planning and zoning laws" when it grants long-term leases). If we were to conclude the State Board must comply with land use and development regulations in all instances including TUPs, § 36-5-114(d) (addressing only long-term leases) would be unnecessary. Section 18-5-201 does not subject the State Board or its permittees on state lands to county land use and development regulations.

[¶20] The legislature has required compliance with county land use and development regulations when the State Board enters long-term leases; it did not require the State Board to comply with those regulations when it issues TUPs, and it did not grant the County Board authority to enforce those regulations when the State Board issues TUPs. *See Campbell Cnty. Bd. of Comm'rs v. Wyo. Horse Racing, LLC*, 2023 WY 10, ¶ 18, 523 P.3d 901, 906–07 (Wyo. 2023) ("It is well established a county has 'no sovereignty independent from that of the state, and the only power available to [it] is the power that has been delegated to [it] by the state.'" (citation omitted)).

## CONCLUSION

[¶21] When operating under a TUP, the State Board and its permittees on state land are not subject to a county's land use and development regulations. We affirm the district court's grant of summary judgment in favor of the State Board.