# IN THE SUPREME COURT, STATE OF WYOMING

## 2026 WY 33

**OCTOBER TERM, A.D. 2025**

**March 10, 2026**

RONALD W. HEIN and LINDA M. HEIN,

Appellants
(Defendants),

v.

STEVEN PAUL CARLSON and
PAULETTE JOAN CARLSON; and
CLARENCE LEE DANIELS and MARY
JO DANIELS,

Appellees
(Plaintiffs).

S-25-0168

*Appeal from the District Court of Natrona County*
*The Honorable Kerri M. Johnson, Judge*

*Representing Appellants:*
    Patrick T. Holscher, Schwartz, Bon, Walker & Studer, LLC, Casper, Wyoming.
    Argument by Mr. Holscher.

*Representing Carlson Appellees:*
    J. Kenneth Barbe, Welborn Sullivan Meck & Tooley, P.C., Casper, Wyoming.
    Argument by Mr. Barbe.

*Representing Daniels Appellees:*
    Keith R. Nachbar, Keith R. Nachbar, P.C., Casper, Wyoming.

*Before BOOMGAARDEN, C.J., and GRAY, FENN, JAROSH, and HILL, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]   Ronald W. and Linda M. Hein (the Heins) appeal a district court order granting summary judgment to Steven Paul and Paulette Joan Carlson (the Carlsons) and Clarence Lee and Mary Jo Daniels (the Daniels), declaring the Carlsons and Daniels own certain disputed land between a designated meander line south of the North Platte River and the thread of the North Platte River.  We affirm.

### ISSUE

[¶2]   The dispositive issue is whether the meander line rule applies to the conveyances in this case.

### FACTS

[¶3]   The following facts are undisputed.  Red Butte Subdivision No. 2 (Red Butte or Red Butte Subdivision) lies south of the North Platte River and Trails West Estates Subdivision (Trails West or Trails West Subdivision) lies north of the river.  All parties to this action own residential lots along West Riverside Drive in Red Butte.  The subdivisions and the parties' lots are depicted on the map below.  On the map, the lots designated as "Plaintiffs" belong to the Carlsons and the lots designated as "Defendants" belong to the Heins.  The Daniels, who are also plaintiffs/appellees in this matter, own lot 6700, adjacent to the Heins' lot 6686.

[¶4]   The property at issue (referred to as "meander land") is the area lying south of the current thread of the North Platte River to the northern edge of the parties' lots as depicted on the map below.  The parties have historically considered and used this land as an extension of their backyards.  The northern edge of the lots corresponds to a designated meander line from the original government survey.  The dispute concerns whether title to the land between this meander line and the present thread of the North Platte River vested in the Heins.



[¶5]    The meander land lies in the NW¼SE¼ of Section 22, Township 33 North, Range 80 West.  The United States Government originally conveyed the meander land as part of a larger tract that included land on the north and south sides of the North Platte River to John M. Trevett in 1909.[1]  In 1948, Mr. Trevett conveyed the NW¼SE¼ of Section 22 to June Anne Trevett Greene.  In a single deed, dated August 15, 1958, Ms. Trevett Greene and various other Trevett family members conveyed multiple tracts of land on the south side of the North Platte River to H. M. Pursel.  Because of differing ownership among the Trevett grantors, the 1958 deed identifies each parcel by the name of the owning Trevett family member.  The northern boundary of each conveyed parcel is expressly described as "the meander line of the southerly and right bank of the North Platte River as set forth by the field notes of the U. S. Government Resurvey approved April 4, 1935."  The property conveyed in the 1958 deed as Parcel No. 1 forms the core of the dispute before us.  This parcel, which encompassed the meander land, was later developed as the Red Butte Subdivision.  The deed describes it as:

> Parcel No. 1: Surface owned by June Anne Trevett Greene; Minerals owned by all parties grantor.  A parcel being a portion of the NW¼SE¼ of Section 22, Township 33 North, Range 80 West of the 6th P.M., Natrona County, Wyoming, said parcel being more particularly described as follows: Beginning at a point which is the southwesterly corner of said parcel and also the southwest corner of said NW¼SE¼, said Section 22; thence from said point of beginning N. 3º29' E., 248.1 feet along the west line of said NW¼SE¼, Section 22 **to a point on the meander line of the southerly and right bank of the North Platte River** as set forth by the field notes of the U. S. Government Resurvey approved April 4, 1935; **thence along the meander line of said right bank of the North Platte River**, S. 78º48' E. a distance of 656.7 feet to a point; thence S. 86º30' E. a distance of 700.0 feet to a point on the easterly line of said NW¼SE¼ of said Section 22; thence S. 5º18' E. a distance of 74.5 feet to the southeasterly corner of said NW¼SE¼, said Section 22; thence S. 89º56'W. a distance of 1350.6 feet along the southerly line of said NW¼SE¼ of said Section 22 to the point of beginning; said parcel containing 4.21 acres.

[¶6]    In 1974, Ms. Trevett Greene conveyed the remainder of the NW¼SE¼ of Section 22 to the Wyoming National Bank of Casper, Trustee (Wyoming National Bank of Casper),

---

[1] This conveyance is not contained in the record, but the parties agree that the original patent to the land was given to Mr. Trevett.

excepting the property she had earlier conveyed to H. M. Pursel from the grant.[2] The Wyoming National Bank of Casper property eventually became part of the Trails West Subdivision. The Trails West Subdivision lies north of the North Platte River, with the exception of property identified as Park 10, which the Heins claim extends from the northern bank of the North Platte River, under the river, and to the meander line. A 2001 quitclaim deed conveyed Park 10 to the Heins.

[¶7] The parties dispute ownership of the meander land. The Carlsons and the Daniels initiated separate quiet title actions, which were consolidated in the district court. All parties moved for summary judgment. The district court granted summary judgment in favor of the Carlsons and Daniels. The Heins appeal.

## STANDARD OF REVIEW

[¶8] Our standard of review of a district court's order granting summary judgment is well established:

> We review a grant of summary judgment de novo. "This Court affords no deference to the district court's ruling and, instead, reviews a 'summary judgment in the same light as the district court, using the same materials and following the same standards.'" *Hurst v. Metro. Prop. & Cas. Ins. Co.*, 2017 WY 104, ¶ 8, 401 P.3d 891, 895 (Wyo. 2017) (quoting *Lindsey v. Harriet*, 2011 WY 80, ¶ 18, 255 P.3d 873, 880 (Wyo. 2011)). "Summary judgment can be sustained only when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law." *Rafter J. Ranch Homeowner's Ass'n v. Stage Stop, Inc.*, 2024 WY 114, ¶ 17, 558 P.3d 562, 569 (Wyo. 2024) (quoting *Gumpel v. Copperleaf Homeowners Ass'n, Inc.*, 2017 WY 46, ¶ 24, 393 P.3d 1279, 1289 (Wyo. 2017)); W.R.C.P. 56(c).

*Teton Cnty. Bd. of Cnty. Comm'rs v. Bd. of Land Comm'rs*, 2025 WY 48, ¶ 8, 567 P.3d 675, 678 (Wyo. 2025).

## DISCUSSION

[¶9] The Heins argue the meander land belongs to them by virtue of the metes and bounds description of the Trails West Subdivision, the Red Butte plat, and a 2001 quitclaim

---

[2] The deed excepts from the grant "the surface parcels previously transferred . . . in the NW¼SE¼ . . . of Section 22 by deed dated August 15, 1968 [sic] and appearing in Book 172 of Deeds at page 567 of the Natrona County records."

deed, which conveyed Park 10 to them. The Carlsons and Daniels counter that the meander land at issue in this case belongs to them under the meander line rule. We begin our analysis with an examination of the meander line rule. We then consider the relevant conveyances using the meander line rule and other authority to determine whether Park 10 includes the meander land. We conclude it does not.

## A.     The Meander Line Rule

[¶10]   Between 1785 and the early 1800s, Congress required official government surveys to divide all territories acquired by the United States north of the Ohio River and west of the Mississippi River (with the exception of Texas) into six-mile square townships, composed of 36 square-mile sections, each containing 640 acres. 1 Joyce Palomar, *Patton and Palomar on Land Titles*, § 116 (3d ed. 2003). This became known as the Public Land Survey (PLS) system. *Id.*

[¶11]   Under the PLS system, surveyors used meander lines to define "the sinuosities of the shore or bank of a body of water." Walter G. Robillard & Lane J. Bouman, *Clark on Surveying and Boundaries*, § 13.01 (6th ed. 1992). Meander lines allowed surveyors to "ascertain the acreage that is available for sale or grant" by the federal government. Palomar, *supra*, § 117. In plain terms, a meander line is not the actual boundary of the land. It is simply a surveyor's approximation of the river's winding curves (its "sinuosities") at the time of the survey. *St. Paul & Pac. R.R. Co. v. Schurmeir*, 74 U.S. 272, 286–87, 19 L.Ed. 74 (1868) ("Meander-lines are run in surveying fractional portions of the public lands bordering upon navigable rivers, not as boundaries of the tract, but for the purpose of defining the sinuosities of the banks of the stream[.]").

[¶12] "[T]he PLS system meander line methodology became a generally accepted professional standard and practice for surveying and describing public and private lands bounded by water bodies." *Ash v. Merlette*, 2017 MT 305, ¶ 15, 407 P.3d 304, 310.

> Consistent with this generally accepted standard . . . , a federal and state common law rule soon developed that, unless the language of a conveyance clearly and unequivocally manifests a more limited intent to fix a riparian boundary to the precise course specified in a property description, a riparian boundary specified or depicted in an instrument of conveyance, or incorporated survey or plat map, is merely a meander line, *i.e., a mere approximation of* the ever-fluctuating and meandering edge of a water body intended as *the actual boundary line* of the property.

*Id.* ¶ 16, 407 P.3d at 310 (citing cases); *see also Meander Line*, Black's Law Dictionary (12th ed. 2024) (defining a meander line as "[a] survey line (not a boundary line) on a

4

portion of land, usu. following the course of a river or stream. . . . [T]he watercourse, and not the meander line as naturally run on the ground, is the boundary." (citation omitted)).

## B. The Meander Line Rule in Wyoming

[¶13] In *Johnson Irrigation Co. v. Ivory*, 46 Wyo. 221, 24 P.2d 1053 (1933), this Court applied the meander line rule to resolve the boundary dispute involving lands conveyed by federal homestead patents and lands subject to an irrigation right-of-way. The issue concerned a strip of land between the meander line and the actual shore of a reservoir. We held that the meander line was **not** the true boundary. Applying the meander line rule, we ruled that the boundary follows the **actual shore or water line** of the reservoir:

> [T]he north line of [Johnson's] reservoir shown on the approved maps is a meander line intended to coincide with the natural ground shore, and not different from the meander line of a natural lake. **It is generally held in such cases that the body of water itself, and not the surveyed meander line, is the true boundary. In the eye of the law the shore of a body of water, though a shifting line, is just as fixed a boundary as a street or wall. . . . Except under special circumstances, a patent which refers to a plat showing a meandered lake or stream as a boundary of the land conveyed has the legal effect of a declaration that the land is bounded by the lake or stream.**

*Id.* at 1057 (emphasis added) (citations omitted).

[¶14] This Court has not expressly held the meander line rule applies to private conveyances. We see no reason to depart from the generally recognized principle that the meander line rule "applies to government and private surveys alike." 11 C.J.S. *Boundaries* § 55; *see Ash*, ¶ 16, 407 P.3d at 310–11; *Andersen v. Monforton*, 2005 MT 310, ¶¶ 22–24, 125 P.3d 614, 619; *Stott v. Stevens*, 873 P.2d 380, 382 (Ore. Ct. App. 1994); *Ford v. Butte Cnty.*, 145 P.2d 640, 643 (Cal. Dist. Ct. App. 1944). Accordingly, whether a conveyance is from the United States Government or a private party, unless the language of conveyance clearly and unequivocally manifests an intent to fix a riparian boundary to the precise course specified in a property description, a riparian boundary specified or depicted in the conveyance as a meander line will establish a boundary at the natural shore of the body of water.

[¶15] In Wyoming, when a river or waterbody is referenced as a boundary in a conveyance or plat, the waterbody itself constitutes the true boundary. For non-navigable rivers like the North Platte, riparian owners hold to the thread (centerline) of the river. *Jourdan v. Abbott Constr. Co.*, 464 P.2d 311, 314 (Wyo. 1970) (when the meander line is along a non-

5

navigable river, the thread or channel of the river is the property line); *Wilson v. Lucerne Canal & Power Co.*, 2007 WY 10, ¶ 31, 150 P.3d 653, 665 (Wyo. 2007) ("Where a non-navigable river or stream is the boundary between two parcels of land, the boundary lies along the thread of the main channel."); *Glover v. Giraldo*, 824 P.2d 552, 554 (Wyo. 1992) (when a "deed describes land bounded by a non-navigable stream and names the stream as a monument, a presumption exists that the grant extends to the center and the thread of the stream is the true boundary").

## C.    Application of the Meander Line Rule to This Case

[¶16]   We turn now to the relevant conveyances in this case.  We construe deeds as any other contract—we look to the intent of the parties.  "The deed must be considered as a whole and the intent of the parties gathered from the plain and unambiguous language contained therein."  *Glover*, 824 P.2d at 554.

> "We interpret a warranty deed like a contract from specific language of the deed, and begin by looking at the instrument itself."  *Seven Lakes* [*Dev. Co. v. Maxson*], 2006 WY 136, ¶ 10, 144 P.3d [1239,] 1245 [(Wyo. 2006)] (quoting *Gilstrap v. June Eisele Warren Tr.*, 2005 WY 21, ¶ 12, 106 P.3d 858, 862 (Wyo. 2005) (quotation marks and citation omitted)).  We look first at the terms of the deed, giving them their plain and ordinary meaning: "that meaning which the language would convey to reasonable persons at the time and place of its use."  *Seven Lakes*, 2006 WY 136, ¶ 10, 144 P.3d at 1245 (quoting *Gilstrap*, 2005 WY 21, ¶ 12, 106 P.3d at 862 (alteration and quotation marks omitted)).  When the terms are clear and unambiguous, this Court looks within the "four corners" of the document to arrive at the intent of the parties. *Seven Lakes*, 2006 WY 136, ¶ 10, 144 P.3d at 1245 (citing *Gilstrap*, 2005 WY 21, ¶ 12, 106 P.3d at 862).  However, "even if a contract is unambiguous, we can examine evidence of the circumstances surrounding the execution of the deed to arrive at the parties' intent."  *Leeks Canyon Ranch, LLC v. Callahan River Ranch, LLC*, 2014 WY 62, ¶ 14, 327 P.3d 732, 738 (Wyo. 2014) (quoting *Ecosystem Res., L.C. v. Broadbent Land & Res., L.L.C.*, 2007 WY 87, ¶ 10, 158 P.3d 685, 688 (Wyo. 2007)).

*Smithson v. Lindzey*, 2021 WY 15, ¶ 12, 479 P.3d 759, 764 (Wyo. 2021).  Likewise, "[w]e consider language used in a [subdivision] plat in accordance with contract interpretation principles."  *Carnahan v. Lewis*, 2012 WY 45, ¶ 16, 273 P.3d 1065, 1071 (Wyo. 2012) (citation omitted).

[¶17]   The Heins argue the meander line rule is inapplicable here, asserting three related but distinct arguments in support of their position.  First, they contend the subdivision plats establish the boundary at the meander line south of the North Platte River.  Second, they argue that the subdivision plats establish and fix the boundary at the meander line pursuant to Wyo. Stat. Ann. § 34-12-102.  Third, they contend *Glover*, 824 P.2d at 553–55, is controlling.

[¶18]   Before addressing the Heins' first and second contentions concerning the effect of the subdivision plats (including their invocation of Wyo. Stat. Ann. § 34-12-102), we discuss cases from other jurisdictions which we find to be instructive.  In *Andersen*, ¶¶ 6– 8, 125 P.3d at 615–17, a ranch property bordering the Jefferson River in Montana was subdivided.  The 1971 deed to the developer, and the subdivision plat, described the property boundary by reference to a point along the riverbank and then "meandering the right bank" along a course that corresponded with the high-water mark of the river.  *Id.* ¶¶ 7, 26, 125 P.3d at 616, 619–20.  McCollum, LLC (McCollum) acquired the remaining portion of the original ranch that was undeveloped.  *Id.* ¶ 9, 125 P.3d at 617.  McCollum sued owners of lots along the river seeking a declaratory judgment that it owned an 11.14-acre strip between the high and low-water marks of the river.  *Id.* ¶ 14, 125 P.3d at 617.  McCollum argued that the original deed and the subdivision plats described a metes and bounds boundary along the high-water mark of the river, and the land between the high-water mark and the river itself belonged to the undeveloped remainder of the ranch property and therefore, McCollum.  *Id.* ¶ 24, 125 P.3d at 619.  The Montana Supreme Court applied the meander line rule, holding the descriptions in the 1971 deed and subdivision plat referring to the boundary as "meandering" along the river referred to the meander line, the meander line rule applied, and the subdivision lot boundaries extended to the river.  *Id.* ¶ 27, 125 P.3d at 620.

[¶19]   The Montana Supreme Court applied the rule again in *Ash v. Merlette*.  There, metes-and-bounds descriptions along a lake's high-water mark (with specific courses and pins) were deemed approximate meander lines, even without the word "meander." Property surrounding the lake was subdivided into two parcels, both with lake frontage. *Ash*, ¶ 2, 407 P.3d at 306–07.  The Ash property boundary was described by a "metes and bounds plot running from a referenced starting point on the high-water mark and then 'on and along' the high-water mark three specified courses marked by pin locations" and the Merlette property description specifically excluded the Ash property.  *Id.* ¶ 3, 407 P.3d at 307.  The Montana Supreme Court held that, "[w]hile the descriptions [in the deeds] do not use any form of the term 'meander' to describe the property boundary along [the lake], express reference or use of the term 'meander' in an instrument of conveyance is not talismanic."  *Id.* ¶ 20, 407 P.3d at 312.  It reasoned, "[w]ith or without express reference to the term 'meander,' a metes and bounds description that plots a varying course, using specific measured distances running from precisely referenced points, to plot an otherwise

non-uniform edge of a water body is an approximate meander line unless otherwise clearly provided in the instrument of conveyance." *Id.* (citation omitted).

> As in [*Andersen v.*] *Monforton*, **the metes and bounds descriptions of the Parker Lake frontage in** [**the conveyances**] **are unquestionably meander line descriptions**, *i.e.*, particularized metes and bounds plots approximately corresponding to the otherwise non-uniform edge of a meandering water body. Aside from express references to specific metes and bounds courses along the high-water mark, **nothing in** [**the conveyances**] **indicate**[**s**] **any intent of the parties' common grantors . . . to strip themselves, or successors, of the grantors' preexisting ownership of the land between the high- and low-water marks of** [**the lake**] along the Ash Property. Thus, . . . Streeters retained ownership of the land between the high- and low-water marks along the Ash Property . . . , which then carried forward to Ash under a successive conveyance referencing [the original deed] without limitation. Merlette never acquired title to the land between the high- and low-water marks along the Ash Property because the source description of the property in [the original deed] was insufficient to separate the adjoining land below the high-water mark and the subsequent deed from Streeters to Bradshaw expressly excluded the Ash Property from the conveyance of the Merlette Property. **Bradshaw simply never owned the disputed land below the high-water mark to convey to Merlette even if he had intended to do so.** Despite express reference to the high-water mark, the specific metes and bounds description of the riparian boundary of the Ash Property . . . , as carried forward and repeated in substance in the Ash deed, was a meander line establishing the riparian boundary of the Ash Property at least to the low-water mark of [the lake] . . . .

*Id.* ¶ 22, 407 P.3d at 312–13 (emphasis added).

[¶20]  *Stott*, 873 P.2d at 381–82 addressed the application of the meander line rule to a subdivision adjacent to the Pacific Ocean. The subdivision plat referred to a "gov[ernment] meander corner" with the western boundary of the plat taking "a meandering course southward to the southwestern corner of the plat. . . . The parties agree[d] that the government meander line [was] at least six feet east of the designated plat boundary." *Id.* at 381. The *Stott* court held that the use of the government meander corner evidenced the

subdivider's "intent that the property platted was to extend to the ocean" and the fact that the western boundary of the plat is six feet farther west than the meander line did "not create a contrary inference." *Id.* at 382.

[¶21]  With these cases in mind, we turn to the Heins' contention that the Red Butte and Trails West subdivision plats fixed the boundaries at the southern meander line.  To address this contention, we must first examine what was owned at the time the subdivisions were established.  To do that, we turn to the conveyances made by Ms. Trevett Greene.  In 1958, Ms. Trevett Greene conveyed property on the south side of the North Platte River that eventually became part of the Red Butte Subdivision to H. M. Pursel.  The deed described that property, in relevant part, as

> Beginning at a point which is the southwesterly corner of said parcel and also the southwest corner of said NW¼SE¼, said Section 22; thence from said point of beginning N. 3º29' E., 248.1 feet along the west line of said NW¼SE¼, Section 22 **to a point on *the meander line* of the southerly and right bank of the North Platte River** as set forth by the field notes of the U. S. Government Resurvey approved April 4, 1935; **thence *along the meander line* of said right bank of the North Platte River**, S. 78º48' E. a distance of 656.7 feet . . . .

(Emphasis added.)  This language unambiguously identifies the southern meander line of the North Platte River and evidences the grantor's intent to convey property bounded by the southern bank of the river in accordance with the meander line rule.  Because the North Platte River is a non-navigable water, the grant extended to the thread of the river.  *Supra* ¶ 15; *Wilson*, ¶ 32, 150 P.3d at 666 ("The North Platte River in Wyoming is non-navigable.").  The 1958 deed to H. M. Pursel conveyed the land south of the North Platte River to the thread of the river, including the meander land.

[¶22]  Ms. Trevett Greene later conveyed the remainder of the NW¼SE¼ of Section 22 to the Wyoming National Bank of Casper.  She expressly excluded the land previously conveyed to H. M. Pursel from this conveyance.  Wyoming National Bank of Casper never acquired title to the meander land or to land under the North Platte River south of the river's thread.  Because the Wyoming National Bank of Casper lacked title to land south of the thread, any land south of the thread depicted on the Trails West plats (including Park 10) was owned by others and the subdivider could not fix a boundary on lands of others.

[¶23] The Heins' second contention—that Wyo. Stat. Ann. § 34-12-102 fixes the boundaries at the meander line because the plats "fully complied" with the statute and descriptions by plat are "good and valid for all intents and purposes"—is unpersuasive. The statute requires subdividers to file plats that "accurately describe all the subdivisions . . . . Descriptions of lots or parcels of land in such subdivisions, according to the number

9

and designation thereof, on said plat contained, in conveyances, or for the purposes of taxation, **shall be deemed good and valid for all intents and purposes**." Wyo. Stat. Ann. § 34-12-102 (LexisNexis 2025) (emphasis added). The Heins contend that because the Red Butte and Trails West subdivisions "fully complied with" this statute, the Red Butte northern boundary and the Trails West southern boundary ought to be fixed at the meander line south of the North Platte River. We agree that the statute requires subdividers to file plats that "accurately describe all the subdivisions" of the tract owned and deems lot descriptions by plat reference valid in conveyances or for taxation. It does not, however, authorize a plat to include or fix title to land that the subdivider never owned or that was expressly excepted from the chain of title. The meander land was not part of the Trails West Subdivision as it was not conveyed to Wyoming National Bank of Casper. The plat could not remedy or override the lack of title.

[¶24] We address the Heins' third argument—that *Glover* controls and under its reasoning they have vested title in the meander land. The deed in *Glover* conveyed "[a] tract of land . . . containing all that portion between the West Boundary line of [a] subdivision and the North Platte River, more particularly described as follows: . . . Thence N.09º08'E. **along the left bank of said river** a distance of 88.7 feet" and the deed made multiple other references to the "left bank of the river." *Glover*, 824 P.2d at 553–54 (emphasis added). The district court held this language conveyed title only to the left bank of the river, and on appeal, the appellant argued that the deed conveyed land to the thread of the river. *Id.* at 554. We affirmed, concluding the deed was "specific in its language, naming the bank of the stream as the boundary of the land conveyed" and the "grant must be interpreted as intending to convey only to the bank of the North Platte River." *Id.* at 555.

[¶25] *Glover* is distinguishable and does not support the Heins' position. Unlike *Glover*, where the deed explicitly and repeatedly referenced the "left bank" or "bank" of the river, the relevant conveyance instruments here refer specifically to the "meander line of the southerly and right bank of the North Platte River." The legal description in *Glover* did not include a designated meander line. Here, the deed referred specifically to the "meander line of the southerly and right bank of the North Platte River" and did not contain any indication that the intent was other than to convey the property to the thread of the river. *See Johnson Irrigation*, 24 P.2d at 1057 (a conveyance "showing a meandered lake or stream as a boundary of the land conveyed has the legal effect of a declaration that the land is bounded by the lake or stream" (citations omitted)).

[¶26] Finally, the Red Butte Subdivision plat (filed 1960) confirms our view of the boundary and intent of the parties. It references a "Special Meander Corner, GOVERNMENT BRASS CAP" and denotes the "Subdivision Boundary" with arrows pointing to what is labelled as the "MEANDER LINE RIGHT BANK NORTH PLATTE RIVER." These references are evidence of intent that Red Butte be bounded by the river. *See Stott*, 873 P.2d at 382–83 ("In the final analysis, the most persuasive fact is that the [subdivision] plat makes an express call to the government meander corner . . . ."). This

10

view is supported by Red Butte's covenants and restrictions which contain conditions for restrictions on "lake front, stream or river front properties" including limitations on constructing docks and "[s]urface launching gear."

[¶27]   Based upon the undisputed evidence, the language and timing of the conveyances, and application of the meander line rule, we find that Park 10 does not include the meander land.  The Red Butte Subdivision extends to the thread of the North Platte River.

### *CONCLUSION*

[¶28]   The meander line rule applies to the conveyances in this matter.  The property line between the parties' lots in Red Butte and Park 10 is the thread of the North Platte River.  Affirmed.